[Civ. No. 25065. Third Dist. Apr. 15, 1986.]

MILDRED M. MAST, Plaintiff and Appellant, v.
GEORGE MAGPUSAO et al., Defendants and Respondents.

**COUNSEL**

Albert J. Lenzi, Jr., and Brislain, Zink & Lenzi for Plaintiff and Appellant.

Douglas Newlan, Lynn D. Fender and Barr, Newlan & Sinclair for Defendants and Respondents.

**OPINION**

**EVANS, J.**—This appeal arises from a personal injury action in which a judgment of nonsuit was entered against plaintiff. We reverse.

Plaintiff, by and through her guardian ad litem, filed an action seeking damages for injuries, which resulted from a fall caused by a fellow resident of the Cedar Glen Guest Home, which action was attributable to defendant owners' negligence in the care and supervision of the home's residents. At the close of plaintiff's case, the trial court granted defendants' motion for nonsuit and entered judgment in their favor. The court taxed costs and ordered plaintiff to pay defendants' expert witness fees in the amount of $1,300. (Code Civ. Proc., § 998.) On appeal, plaintiff challenges the propriety of the grant of nonsuit and the award of expert witness fees.

■ "A judgment of nonsuit removes the case from the trier of fact. For this reason, courts have traditionally taken a very restrictive view of the circumstances under which such a judgment is proper. Thus, it is established that a trial court may not grant a defendant's motion for nonsuit if the plaintiff's evidence would support a jury verdict in the plaintiff's favor. [Citations.] [k] 'In determining whether plaintiff's evidence is sufficient, the [trial] court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give "to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff['s] favor . . . ." [Citation.]' [Citation.]" (*Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 129-130 [211 Cal.Rptr. 356, 695 P.2d 653].)

With these rules in mind, we review the relevant evidence as disclosed by the record. In June 1984, plaintiff sustained a broken hip as a result of a fall at defendants' rest home. Although there were no witnesses to the incident, defendants reported that plaintiff's injury was caused by a push from Gordon Pattee, another resident of the home. Mr. Pattee had displayed aggressive tendencies since his arrival at Cedar Glen on March 16, 1984. His conduct precipitated an examination by Dr. Walter Strachan, a psychiatrist, to determine whether serious adjustment problems existed. In a report dated March 29, 1984, Dr. Strachan prescribed that Mr. Pattee be given Moban every four hours as needed. He also expressed his hopes that the patient would settle down and be an acceptable resident at the rest home.

Sally Gonzales, a former aide supervisor at the rest home, testified the Moban had a temporary calming effect on Pattee during the first two weeks of administration; however, thereafter, the drug did not seem to have an effect on him. Ms. Gonzales had spoken with defendants about Pattee's aggressive tendencies on several occasions. At the end of April or the beginning of May 1984, she recommended Pattee be transferred to another type of facility.

On May 6, 1984, Pattee was observed striking plaintiff, cutting her face and hand. Ms. Gonzales testified Pattee had often been aggressive with plaintiff, and further stated she had discussed the friction between Pattee and plaintiff with defendants prior to leaving Cedar Glen, and had recommended that the residents be kept separated for their own safety.

Cedar Glen had a nine-member working staff in March 1984. By June of that year, the staff had been reduced to the two owner defendants and two other employees. At the time of plaintiff's injury, the rest home housed approximately 21 residents in 2 adjoining wings; plaintiff and Pattee occupied adjoining rooms. At the time of the incident, the only person on duty supervising the residents was defendant George Magpusao. Immediately prior to the incident, he observed plaintiff and Pattee walking down a corridor together. Later, defendant heard moans coming from plaintiff's room, and saw Pattee leaving. He investigated and found plaintiff lying on the floor.

The trial court granted defendants' motion for nonsuit for the reason that plaintiff failed to present expert testimony.[1] It ruled that the issue of professional negligence, raised by the circumstances of the case, required expert testimony to establish an appropriate standard of care. That conclusion was in error.

Plaintiff's complaint alleged ordinary negligence. "[T]he proprietors of a 'rest home,' like those of a private hospital, are under a duty of exercising reasonable care to avoid injury to patrons." (40 Am.Jur.2d Hospitals and Asylums, § 36, p. 877; see *Bezark* v. *Kostner Manor, Inc.* (1961) 29 Ill.App.2d 106 [172 N.E.2d 424]; Annot. (1960) 70 A.L.R.2d 366-368.) In *Isaacs* v. *Huntington Memorial Hospital, supra,* 38 Cal.3d 112, the Supreme Court recognized a hospital's liability for injuries sustained as a result of the actions of third parties. The plaintiff in that case, a doctor associated with the defendant hospital, was shot in the hospital's parking lot. (*Id.,* at p. 120.) The evidence showed the hospital was located in a high-crime area and that the potential risk of harm to its patrons was known. (*Id.,* at p. 130.) In reversing a judgment for nonsuit, the court reiterated the well-established rule that landowners owe patrons ordinary care to protect them from any danger or injury they may reasonably anticipate. (*Id.,* at p. 124; accord *Martin* v. *Barclay Distributing Co.* (1970) 13 Cal.App.3d 828 [91 Cal.Rptr. 817].)

We find this case to be analogous. Here, plaintiff has claimed that defendants were negligent for failing to protect her from another resident of

---

[1]Plaintiff also asserts the court erred by failing to recognize Sally Gonzales as an expert witness.

the rest home. (*Facey* v. *Merkle* (1959) 146 Conn. 129 [148 A.2d 261, 264, 70 A.L.R.2d 358] [a resident of the defendant's rest home was entitled to the protection given a business visitor].) The record indicates defendants were aware of the aggressive tendencies of Mr. Pattee and the potential for conflict between him and plaintiff. Thus, a jury could have determined defendants failed to exercise reasonable care by failing to adequately supervise Pattee and separate him from plaintiff.

Plaintiff's assertion and our conclusion that defendants should have been judged by principles of ordinary negligence is supported by the reasoning in an Illinois case, *Bezark* v. *Kostner Manor, Inc., supra,* 172 N.E.2d 424. There, a patient of a nursing home fell and was injured as a result of being struck by a fellow patient who was intoxicated. The court stated that "As to dangers reasonably to be anticipated from acts of other persons under the hospitals' control, reasonable care and attention must be exercised for the safety and well-being of their patients, in proportion to the circumstances and their ability to look after their own safety." (*Id.,* at p. 426.) The facts of that case revealed the defendant had notice the assertive patient was frequently intoxicated, argumentative, and required discipline. The court determined the exercise of reasonable care required the defendant to either prevent that patient from getting intoxicated, separate him from the other residents, or remove him from the home. (*Id.,* at p. 427.)

Even if we were to view this case as one involving professional negligence, expert testimony was not required. It is well recognized that an exception to the requirement of expert testimony in such cases exists "if the subject matter of the litigation is such that laymen could infer *as a matter of common knowledge* that the injury would not have occurred unless the defendant were negligent. [Citation.]" (*Meier* v. *Ross General Hospital* (1968) 69 Cal.2d 420, 429 [71 Cal.Rptr. 903, 445 P.2d 519]; italics in original; accord *Myers* v. *Ross* (1963) 216 Cal.App.2d 645 [31 Cal.Rptr. 110].)[2]

Since we have been unable to find any California cases which have determined such an exception applies under the circumstances, we find the

---

[2]"Other cases where the knowledge of laymen has been held sufficient have involved injuries unrelated to the medical treatment being administered. Where a clamp or sponge was left in a patient's abdomen after surgery, this court has recognized that no medical expertise is necessary in order to infer negligence. (*Leonard* v. *Watsonville Community Hosp.* (1956) 47 Cal.2d 509 [305 P.2d 36]; *Ales* v. *Ryan* (1936) 8 Cal.2d 82 [64 P.2d 409].) The same result has been reached where the patient receives an injury to a portion of the body different from the part being treated. In *Ybarra* v. *Spangard* (1944) 25 Cal.2d 486 [154 P.2d 687, 162 A.L.R. 1258], a patient after undergoing an appendectomy found his shoulder paralyzed. In *Meyer* v. *McNutt Hospital* (1916) 173 Cal. 156 [159 P. 436], plaintiff's legs were badly burned by a hot-water bottle while she was unconscious from the effects of anesthesia." (*Kerr* v. *Bock* (1971) 5 Cal.3d 321, 328 (dis. opn. of Sullivan, J.).)

Kansas case of *Juhnke* v. *Evangelical Lut. Good Sam. Soc.* (1981) 6 Kan.App.2d 744 [634 P.2d 1132], most helpful. The plaintiff in that case, a patient of a nursing home, brought a personal injury action against the home for injuries sustained as a result of being pushed to the floor by a fellow patient. The record showed the defendant home was put on notice that the aggressive patient was suffering from progressive mental deterioration and had previously demonstrated belligerent behavior by pushing, tripping, and hurting other patients. That Kansas court, in reversing a judgment for the defendant based on an absence of expert testimony, stated, "Under the facts of this case, we find that the trier of fact would have been fully capable of determining, without the aid of expert testimony, whether the defendant nursing home breached its duty to exercise reasonable care to avoid injury to the patient. We find that the common knowledge exception to a requirement of expert testimony . . . would apply . . . . The treatment and care of this patient was so obviously lacking in reasonable care and had such serious consequences that the lack of reasonable care would have been apparent to and within the common knowledge and experience of mankind in general. Under the facts of this case, we find that testimony by an expert witness to establish the standard of care prevailing among nursing homes in like situations was not necessary to prove negligence. The primary purpose of expert testimony is to establish the community standards for the benefit of the trier of fact when the facts are somewhat alien in terminology and the technological complexities would preclude an ordinary trier of fact from rendering an intelligent judgment. [Citation.]" (*Juhnke, supra,* 634 P.2d at pp. 1136-1137.)

Defendants attempt to distinguish *Juhnke,* asserting that, unlike the circumstances in *Juhnke,* they had obtained professional psychiatric consultation for Mr. Pattee and had relied on Dr. Strachan's report that Pattee might be an acceptable resident of their rest home. Defendants' argument misses the mark.

First, we note Dr. Strachan's report was not based on all the information available to defendants. The report was prepared in March 1984, prior to the incident in which Mr. Pattee had demonstrated his aggressive behavior toward plaintiff by striking her. Furthermore, the report indicated a need to keep Pattee under close observation and recommended that Pattee be given Moban, "'as needed.'" Dr. Strachan's concern for the resident's ability to adjust in defendants' rest home was also reflected by the statement "'the patient, *hopefully,* should be a good candidate for continuing at the Cedar Glenn [*sic*] Guest Home.'" (Italics added.)

The record also shows that (1) Mr. Pattee had previously exhibited violent tendencies on several occasions, one of which involved plaintiff; (2) ani-

mosity existed between Pattee and plaintiff; and (3) defendants knew of these conditions and had been advised to separate the two residents. In spite of such knowledge, defendants permitted Pattee to occupy the room adjoining plaintiff's. In addition, defendant George Magpusao, the only staff person in attendance for the 21 residents at Cedar Glen on the night of the incident, saw Pattee with plaintiff shortly before plaintiff's fall and failed to separate them.

Like *Juhnke,* we find that without expert testimony, the facts presented were sufficient for the jury to have determined from common knowledge that defendants breached this duty to exercise reasonable care to protect plaintiff.[3]

The judgment (order) is reversed.

Puglia, P. J., and Blease, J., concurred.

---

[3]Our determination obviates the need to address plaintiff's remaining contentions.