[No. D020709. Fourth Dist., Div. One. Oct. 27, 1994.]

JENNY S. WILLIAMS et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SAN DIEGO REHABILITATION INSTITUTE, INC., et al., Real Parties
in Interest.

**COUNSEL**

Sheldon Deutsch and David A. Manzi for Petitioners.

No appearance for Respondent.

McInnis, Fitzgerald, Rees & Sharkey, Richard D. Barton and Shelley A. Carder for Real Parties in Interest.

**OPINION**

**BENKE, J.**—In this proceeding we are asked to determine whether Code of Civil Procedure[1] section 425.13, which governs inclusion of a punitive damage claim in an action for professional negligence against a health care provider, applies. The underlying action was brought by Jenny S. Williams, a phlebotomist, allegedly injured while drawing blood from a violent patient at the San Diego Rehabilitation Institute (the Institute). Williams alleges the Institute knew of the patient's violent tendencies of which it failed to warn her. Because we conclude any negligence attributable to the Institute would constitute professional as opposed to ordinary negligence, we conclude section 425.13 applies to the action and deny the petition.

### BACKGROUND

According to the allegations of the complaint: Williams, a nonemployee of the Institute, was invited by the Institute to draw blood from a patient, C.P. C.P. had a propensity to attack female personnel, including nursing and paramedical personnel. C.P.'s combative behavior and propensity to attack female personnel was known to the Institute and its employees. The Institute did not warn Williams about C.P.'s hostile and dangerous propensities. As

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

Williams attempted to draw blood from C.P. he thrashed about attempting to grab her breast. C.P. caused the needle, already contaminated with his blood, to puncture William's gloved hand and lacerate her thumb. Two days later Williams was informed C.P. tested positive for human immunodeficiency virus (HIV).

Williams and her husband filed a complaint setting forth causes of action for personal injuries/premises liability, negligent infliction of emotional distress, intentional infliction of emotional distress, loss of consortium and failure to warn. They also included a "cause of action" for punitive damages.[2] The Institute moved to strike the allegations and prayer for punitive damages based upon the claim having been made in violation of section 425.13. The court issued an order granting the motion.

These proceedings ensued. We issued an order to show cause, stayed the court's order and heard oral argument.

## DISCUSSION

■ Section 425.13 provides that "[i]n any action for damages arising out of the professional negligence of a health care provider, no claim for punitive damages shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed." The terms "professional negligence" and "arising out of" are not defined in section 425.13.

"Professional negligence" is defined in several sections of the Medical Injury Compensation Reform Act (MICRA) as "a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital." (§§ 340.5, 364, subd. (f)(2), 667.7, subd. (e)(4), 1295, subd. (g)(2); Bus. & Prof. Code, § 6146,

---

[2]In the punitive damage "cause of action" Williams alleges: "Pursuant to Code of Civil Procedure Section 3294, the defendants, and each of them, acted despicably whereby their conduct warrants exemplary/punitive damages for the sake of example, by way of punishing said defendants. There is clear and convincing evidence that the defendants, and each of them, conducted themselves in a malicious manner by failing to warn Plaintiff, JENNY S. WILLIAMS, as to the dangerous propensities of the patient, C.P., on the premises of the defendants, on or about November 6, 1992. Accordingly, there was conscious disregard for the rights of the plaintiff when she was on the premises of the defendants, aforesaid. Had there not been such a callous disregard for the rights of Plaintiff, JENNY S. WILLIAMS, which despicable conduct is defined in Code of Civil Procedure Section 3294, said plaintiff would not have been assaulted, battered, and physical [sic] injured in violation of Civil Code Section 1708.5 (sexual battery) or stuck with the 'dirty needle' aforesaid."

subd. (c)(3); Civ. Code, §§ 3333.1, subd. (c)(2), 3333.2, subd. (c)(2).) In *Central Pathology Service Medical Clinic, Inc.* v. *Superior Court* (1992) 3 Cal.4th 181 [10 Cal.Rptr.2d 208, 832 P.2d 924] (*Central Pathology*) the Supreme Court found the Legislature intended the MICRA definition of "professional negligence" to apply to the later enacted section 425.13. (3 Cal.4th at p. 187.) The term "arising out of" is interpreted as "origination, growth or flow" from the event. (*Id.* at pp. 187-188.)

*The Parties' Contentions*

■ Williams contends section 425.13 does not apply because she has alleged no facts bringing her claim under professional negligence statutes and because no health care provider services were rendered to her by the Institute. Rather, Williams contends as a business invitee of the Institute her case is based on premises liability and the Institute's breach of its duty to exercise ordinary care and warn her of C.P.'s abusive behavior towards woman.

The Institute, on the other hand, contends the provisions of section 425.13 apply because Williams's claims arise out of its functions, duties, and responsibilities as a hospital.[3] That is, any injury to Williams arose in the course of the Institute rendering professional services to C.P. The Institute argues that the application of the section is not affected by the fact the act or omission may have caused injury to Williams, a nonpatient.

*Effect of Status as Nonpatient*

■ By its terms, section 425.13 applies to "any action for damages arising out of professional negligence" and is not limited to actions by the recipient of the professional services. The definition of "professional negligence" also does not require the negligent act or omission to result in injury to the patient.

In several instances MICRA limitations have been applied in actions brought by parties other than the patient. (See, e.g., *Yates* v. *Pollock* (1987) 194 Cal.App.3d 195, 199 [239 Cal.Rptr. 383] [Civ. Code, § 3333.2 limitation on noneconomic damages resulting from a health care provider's professional negligence applies in wrongful death action initiated by survivors

---

[3]The Institute initially argues Williams is not entitled to writ relief because an adequate remedy is available in the trial court through Williams bringing a motion pursuant to section 425.13 and establishing a substantial probability of success on the punitive damage claim. However, Williams contends this is not an action for "professional negligence" and section 425.13 does not apply. If her position is correct, conceding that the section applies and proceeding thereunder cannot provide adequate relief.

of the patient]; *Atkins* v. *Strayhorn* (1990) 223 Cal.App.3d 1380, 1394-1396 [273 Cal.Rptr. 231] [Civ. Code, § 3333.2 limitation on noneconomic damages applied separately to spouse's claim for loss of consortium]; *Taylor* v. *U.S.* (9th Cir. 1987) 821 F.2d 1428, 1431, fn. 2 [Civ. Code, § 3333.2 limitation on noneconomic damages applies to actions brought by relatives of the patient for emotional distress and loss of consortium]; *Bell* v. *Sharp Cabrillo Hospital* (1989) 212 Cal.App.3d 1034, 1048-1052 [260 Cal.Rptr. 886] [hospital's breach of duty to exercise reasonable care in selecting and reviewing the competency of staff physicians held to be professional negligence under Civ. Code, § 3333.2 in wrongful death action by a patient's survivor].)

Most notably, our Supreme Court in *Hedlund* v. *Superior Court* (1983) 34 Cal.3d 695, 704 [194 Cal.Rptr. 805, 669 P.2d 41, 41 A.L.R.4th 1063] (*Hedlund*) held section 340.5, the MICRA statute of limitations governing actions for breach of professional negligence, applied where a woman sued two psychologists after she had been shot by the psychologists' patient. In reaching its decision, the court found the legislative purpose of MICRA, to reduce health care costs by reducing judgments against health care providers rendering professional services, would be frustrated if MICRA restrictions applied to actions by patients but not to actions by third parties injured as a result of the professional negligence. (34 Cal.3d at p. 704.)

By adoption of section 425.13, the Legislature intended to protect health care providers from unsubstantiated claims for punitive damages in actions against those providers in their capacity as practitioners. (*Central Pathology, supra*, 3 Cal.4th at pp. 189-190.) While lawsuits unrelated to the practitioner's conduct in providing health care were not intended to be included (*id.* at pp. 190-191), it would defeat the purpose of the legislation if claims arising out of the practitioner's professional negligence were excluded from coverage simply because the injured party was not a patient. We therefore conclude section 425.13 applies to any foreseeable injured party, including patients, business invitees, staff members or visitors, provided the injuries alleged arose out of professional negligence.

*Professional* v. *Ordinary Negligence*

As previously discussed, all claims of negligence against health care providers are not subject to section 425.13 but only those for "professional negligence." (*Central Pathology, supra*, 3 Cal.4th at pp. 188-190.) An action for damages arises out of the professional negligence of a health care provider if the injury is directly related to the professional services provided by the health care provider. (*Id.* at pp. 191-192.) The test of whether a health

care provider's negligence constitutes professional negligence is whether the negligence occurred in rendering services for which the health care provider is licensed. (*Murillo* v. *Good Samaritan Hospital* (1979) 99 Cal.App.3d 50, 57 [160 Cal.Rptr. 33] (*Murillo*).)

Consistent with *Central Pathology* and *Murillo*, the court in *Hedlund*, *supra*, 34 Cal.3d 695 held the psychologists' failure to warn the shooting victim of the patient's dangerous proclivities in breach of the duty of care recognized in *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166] constituted professional negligence. (*Hedlund*, *supra*, 34 Cal.3d at pp. 700, 704.) The court reasoned the diagnosis of psychological, emotional and mental disorders was a professional service for which the psychotherapist is licensed, and any negligent failure in connection with such diagnosis would constitute professional negligence. (*Id.* at p. 703.) Diagnosis and the appropriate steps necessary to protect the victim were not "separate or severable, but together constitut[ed] the duty giving rise to the cause of action." (*Id.* at p. 704) The duty to warn was therefore "inextricably interwoven" with the therapist's diagnostic responsibilities for which professional negligence standards applied. (*Id.* at pp. 703-704.)

■ Williams attempts to distinguish *Hedlund* first on the basis C.P. made no specific threats against Williams. In *Hedlund* a specific threat was important because a known victim is required for a *Tarasoff* duty to arise. (*Hedlund*, *supra*, 34 Cal.3d at p. 704; *Tarasoff* v. *Regents of University of California*, *supra*, 17 Cal.3d at p. 431.) Such is not the case here. Williams also argues *Hedlund* involved professional negligence because the psychologists there became aware of the threats during their treatment and psychotherapy diagnosis of the patient which required the exercise of the psychologists' professional skill. Our review of the allegations contained in the complaint belies Williams's position.

■ To find whether an action arises out of the professional negligence of the health care provider, the "allegations that identify the nature and cause of a plaintiff's injury must be examined to determine whether each is directly related to the manner in which professional services were provided." (*Central Pathology*, *supra*, 3 Cal.4th at p. 192.) The professional duty of a hospital is primarily to provide a safe environment within which diagnosis, treatment and recovery could be carried out. (*Murillo*, *supra*, 99 Cal.App.3d at pp. 56-57.)

■ At oral argument counsel for the Institute argued the negligent acts or omissions as alleged arose out of the rendering of professional services

because it was out of the Institute's professional care of C.P. that it allegedly became aware of his combative tendencies. Williams's attorney, on the other hand, argued the complaint did not specify how the hospital became aware of the dangerous propensities and alleged only ordinary negligence. Since awareness could have resulted from observation of C.P.'s combative behavior of which any landowner would have duty to warn an invitee, Williams's attorney argued there was no basis to conclude professional negligence was involved.

The complaint generally alleges C.P. was combative or had dangerous propensities of which the Institute knew, should have known, or had a duty to know, and should have warned Williams and others. It however specifically alleges "[a] special relationship existed between [Williams] and the defendants . . . whereby she relied upon the persons *supervising, controlling or attending* said patient, C.P., to *know of his psychological makeup, combativeness, condition of health* and other relevant information so as to warn persons such as [Williams], who might approach or attend or attempt to professionally use a needle to withdraw blood from [C.P.] . . . ." (Italics added.) The complaint also alleges the Institute had C.P. under its "control, supervision and custody" and refers not just to a failure to warn by posting notice in C.P.'s room but also "on his chart." Despite counsel's claim to the contrary, Williams is alleging the Institute, in its care of C.P., became or should have become aware of his dangerous propensities and warned her. The cause of her injury as alleged is directly related to the manner in which professional services were rendered.

Relying on *Gopaul* v. *Herrick Memorial Hosp.* (1974) 38 Cal.App.3d 1002 [113 Cal.Rptr. 811], Williams argues ordinary negligence as opposed to professional negligence is involved because the knowledge of C.P.'s combativeness and abusiveness required no "skill, prudence and diligence" on the part of the Institute but rather simply the exercise of ordinary care. In *Gopaul* the plaintiff had been injured when she fell from a hospital gurney to which she had not been strapped. The court stated the test to determine whether negligence was professional was "whether the negligence occurred within the scope of the 'skill, prudence, and diligence commonly exercised by practitioners of his profession.' [Citation.]" (*Id.* at p. 1007.) The court held the hospital's failure constituted ordinary negligence because the need to strap the patient to the gurney was obvious to all and determining such need did not require the exercise of any professional "skill, prudence, and diligence" (*Ibid.*)

In *Murillo*, *supra*, 99 Cal.App.3d at page 57, a case involving similar facts to those found in *Gopaul*, the court concluded the result reached in *Gopaul*

was incompatible with the definition of professional negligence here in issue. "Under that definition, the test is not whether the situation calls for a high or a low level of skill, or whether a high or low level of skill was actually employed, but rather the test is whether the negligent act occurred in the rendering of services for which the health care provider is licensed." (*Ibid.*) We agree with the *Murillo* court that it is not the degree of skill required but whether the injuries arose out of the rendering of professional services that determines whether professional as opposed to ordinary negligence applies. We therefore conclude the trial court did not err in granting the motion to strike the punitive damage claim.[4]

DISPOSITION

The petition is denied and the stay issued March 23, 1994, is vacated.

Todd, Acting P. J., and Nares, J., concurred.

---

[4]In reaching our decision, we are aware of *Mast* v. *Magpusao* (1986) 180 Cal.App.3d 775 [225 Cal.Rptr. 689] which was not cited by either party. In *Mast* the plaintiff, a resident of a "rest home," was injured by a fellow resident. The plaintiff claimed the defendant rest home owners knew of the other resident's aggressive tendencies towards the plaintiff yet failed to protect her. The trial court granted a nonsuit because the plaintiff failed to present expert testimony. The Court of Appeal concluded ordinary negligence rather than professional negligence was involved. However, the court based its holding on an analysis that even if the case involved professional negligence, expert testimony was not required because laymen as a matter of common knowledge could infer the injury would not have occurred unless the defendants were negligent. (*Id.* at pp. 779-781.) The discussion of ordinary negligence was unnecessary to the court's decision and therefore dicta. However, to the extent *Mast* would support a finding that ordinary negligence rather than professional negligence is at issue here, we disagree for the reasons stated in our opinion and decline to follow the case.