[Civ. No. 31648. First Dist., Div. One. May 3, 1974.]

HELEN L. GOPAUL, Plaintiff and Appellant, v.
HERRICK MEMORIAL HOSPITAL, Defendant and Respondent.

COUNSEL

Conklin, Davids & Friedman, Michael Friedman and Jay R. Mayhall for Plaintiff and Appellant.

Crosby, Heafey, Roach & May, E. Melville McKinney and L. Douglas Pipes for Defendant and Respondent.

OPINION

**ELKINGTON, J.**—A judgment of nonsuit was entered against plaintiff Helen Gopaul in her "malpractice" action against defendant Herrick Memorial Hospital. The trial court had concluded that the one-year statute of limitations of Code of Civil Procedure section 340, subdivision 3, had run before commencement of her action. Her appeal is from the judgment.

Viewed in a light most favorable to plaintiff (see *Reuther* v. *Viall*, 62 Cal.2d 470, 474-475 [42 Cal.Rptr. 456, 398 P.2d 792]), we state the relevant evidence.

Plaintiff presented herself to the hospital one night "because she didn't feel well." Her condition, which appeared serious, was later diagnosed as bronchial pneumonia. Her private physician was called by telephone and, with other instructions, he directed the hospital to take X-rays of the patient. Hospital employees then placed her on a gurney and wheeled her to a room where the X-ray pictures were taken. She was then replaced on, but not strapped to, the gurney, after which she was left unattended while the hospital's technician developed the X-ray film. While so unattended she developed a fit of coughing and fell to the floor. She knew that she had fallen and complained about back pain. Several days later, her pneumonia cured, she was discharged from the hospital. About a year after the accident plaintiff visited another doctor complaining, among other things, of pain in her lower back. The doctor asked if she had ever had any falls. She told him of the fall from the hospital gurney, whereupon he advised her that it was "probably how you hurt your back." Tests revealed a vertebral disc protrusion. This was the first knowledge or information plaintiff had of the relation of the fall to her back condition. The vertebral disc protrusion was thereafter corrected by surgery.

Fifteen months after the fall plaintiff commenced an action against the hospital for injuries alleged to have proximately resulted from its negligence in leaving her unattended and unstrapped to the gurney.

The hospital concedes, at least for the purpose of this appeal, that plaintiff's fall proximately resulted from the negligence of its technician, and by operation of *respondeat superior,* itself. The principal question presented is whether that negligence was "ordinary negligence" or "professional malpractice."

■ An action founded on ordinary negligence must generally be commenced within one year of the commission of the negligent act. (Code Civ. Proc., § 340, subd. 3.) The plaintiff's ignorance of the cause of action, or of the identity of the wrongdoer does not toll the statute. (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal.3d 176, 187 [98 Cal.Rptr. 837, 491 P.2d 421]; *Howe* v. *Pioneer Mfg. Co.,* 262 Cal.App.2d 330, 340 [68 Cal.Rptr. 617].)

An action based on "professional malpractice" is covered by the same statute of limitations.* But decisional law has modified the rule to provide that the statute does not commence running until the plaintiff has discovered, or through the use of reasonable diligence should have discovered, the tortious injury. See *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, supra,* 6 Cal.3d 176, which must now be deemed California's leading case on the application of the statute of limitations to professional malpractice actions.

As might be expected, plaintiff relies upon the "professional malpractice" rule. She argues that substantial evidence supported her claim that she did not know, and through the exercise of reasonable diligence would not have known, that her back injury probably resulted from the fall until she was so advised by the doctor about three months prior to commencement of her action.

"Malpractice" is commonly defined as "any professional misconduct or any unreasonable lack of skill in the performance of professional or fiduciary duties." (Webster's New Internat. Dict. (2d ed.).) ■ And a hospital may be guilty of malpractice in the performance of its professional or fiduciary duties or as was said in *Tunkl* v. *Regents of University of California,* 60 Cal.2d 92, 101 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693], in the area of the "particular skill of its staff and facilities."

■ It will be seen that inherent in the concept of "professional mal-

---

*In 1970, and after the instant action was commenced, the Legislature enacted Code of Civil Procedure section 340.5, which generally fixes the statute of limitations for "medical" malpractice at "four years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, . . ."

practice" is that it must have occurred in the "performance of professional or fiduciary duties." It follows that not every tortious injury inflicted upon one's client or patient or fiducial beneficiary amounts to such malpractice. No reasonable person would suggest that "professional malpractice" was the cause of injury to a patient from a collapsing chair in a doctor's office, or to a client from his attorney's negligent driving en route to the court house, or to a hospital patient from a chandelier falling onto his bed. Such injuries would, no doubt, have proximately resulted from "ordinary negligence," but they would not be brought about from "professional malpractice."

The nature of "professional malpractice," and the rationale for application to it of the liberalized statute of limitations, are made clear by *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, supra,* 6 Cal.3d 176. There (pp. 187-189) the court said: "In ordinary tort and contract actions, the statute of limitations, it is true, begins to run upon the occurrence of the last element essential to the cause of action. The plaintiff's ignorance of the cause of action, or of the identity of the wrongdoer, does not toll the statute. In cases of professional malpractice, however, postponement of the period of limitations until discovery finds justification in the special nature of the relationship between the professional man and his client.

"In the first place, the special obligation of the professional is exemplified by his duty not merely to perform his work with ordinary care but to use the skill, prudence, and diligence commonly exercised by practitioners of his profession. If he further specializes within the profession, he must meet the standards of knowledge and skill of such specialists.

"Corollary to this expertise is the inability of the layman to detect its misapplication; the client may not recognize the negligence of the professional when he sees it. He cannot be expected to know the relative medical merits of alternative anesthetics nor the various legal exceptions to the hearsay rule. If he must ascertain malpractice at the moment of its incidence, the client must hire a second professional to observe the work of the first, an expensive and impractical duplication, clearly destructive of the confidential relationship between the practitioner and his client.

"In the second place, not only may the client fail to recognize negligence when he sees it, but often he will lack any opportunity to see it. The doctor operates on an unconscious patient; although the attorney, the accountant, and the stockbroker serve the conscious client, much of their work must be performed out of the client's view. In the legal field, the injury may lie concealed within the obtuse terminology of a will or con-

tract; in the medical field the injury may lie hidden within the patient's body; in the accounting field, the injury may lie buried in the figures of the ledger.

"Finally, the dealings between practitioner and client frame a fiduciary relationship. The duty of a fiduciary embraces the obligation to render a full and fair disclosure to the beneficiary of all facts which materially affect his rights and interests. . . ."

■ It will be seen that "professional malpractice" was not involved in the defendant hospital's tortious conduct, and that the reasons for the extended statute of limitations for such malpractice are wholly inapplicable here. The need to strap plaintiff to the gurney while she was ill and un-attended would have been obvious to all. The situation required no pro-fessional "skill, prudence and diligence." It simply called for the exercise of ordinary care.

While it is recognized that the dividing line between "ordinary negli-gence" and "professional malpractice" may at times be difficult to place, we find no such difficulty here.

Plaintiff's evidence that other hospitals strapped down unattended pa-tients who had been placed on gurneys did not reasonably bring the practice into the ambit of their "professional or fiduciary duties." It simply established that those hospitals used the obviously required ordinary care in the circumstances.

■ The trial court did not conclude, nor do we, that negligence of a professional person or organization which is obvious to a layman may not be "professional malpractice." The test reasonably must be whether the negligence occurred within the scope of the "skill, prudence, and diligence commonly exercised by practitioners of his profession." (See *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, supra,* 6 Cal.3d 176, 188.)

Having concluded that the hospital's tort consisted of ordinary negli-gence, we need not consider plaintiff's contention that she was erroneously precluded from explaining "why she did not associate the fall from the gurney with her low back pains."

For the reasons stated we hold that no error attended the superior court's ruling that plaintiff's action was founded on "ordinary negligence" to which the straight one-year statute of limitations of Code of Civil Procedure section 340, subdivision 3, applied.

On her appeal plaintiff urges several additional reasons why the motion for nonsuit should not have been granted.

She urges that: "The hospital having negligently injured plaintiff, owed a continuing duty to examine and provide her with adequate medical care." This continuing duty, it is claimed, extended at least into the one-year period prior to the commencement of the action, thus tolling the statute of limitations. She also argues that her private doctor was a "special agent" of the hospital and that accordingly the statute was tolled while she remained under his care. And she contends that the hospital violated its "fiduciary" duty to her by not promptly informing her private doctor of the fall, thus tolling the statute's running until he was so informed.

But none of these points was urged, or argued, or pointed out by plaintiff in the superior court on the hospital's motion for a nonsuit. Her sole contention at that time was described in varying ways as: "When a negligence is alleged against a hospital or hospital employee, that is malpractice or medical negligence"; "negligence against a hospital is malpractice"; It is "a medical malpractice case"; "a case in a hospital is a case involving a breach of duty of the standard of care of hospitals in the community"; and "late discovery is applicable in an action against a hospital."

It is basic to the law of appellate practice that one may not on appeal present theories which were not raised in the trial court. (See *Ernst* v. *Searle,* 218 Cal. 233, 240 [22 P.2d 715]; *Rivas* v. *Ayala,* 208 Cal. App.2d 239, 242-243 [25 Cal.Rptr. 48]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 281, et seq.) The rule applies with equal force to positions taken by parties in the lower court on a motion for nonsuit. (See *Carmichael* v. *Reitz,* 17 Cal.App.3d 958, 968-969 [95 Cal.Rptr. 381], a "medical malpractice" case.) We decline to consider plaintiff's tardily raised theories.

Parenthetically, it seems proper to note that plaintiff's doctor, according to the hospital's records, was notified of her fall soon after it occurred, and that the doctor admitted that he "learned subsequently" about it. Apparently the matter was considered unimportant at the time for no one bothered to inquire further as to just when, and by whom, the doctor was told of the fall.

For the reasons stated the judgment of nonsuit must be affirmed.

Affirmed.

Molinari, P. J., and Sims, J., concurred.

A petition for a rehearing was denied May 30, 1974, and appellant's petition for a hearing by the Supreme Court was denied June 26, 1974.