[No. F026003. Fifth Dist. Nov. 1, 1996.]

GARNET BELLAMY, Petitioner, v.
THE APPELLATE DEPARTMENT OF THE SUPERIOR COURT OF
KINGS COUNTY, Respondent;
CENTRAL VALLEY GENERAL HOSPITAL, Real Party in Interest.

**COUNSEL**

Greg A. Morris, Tritt & Tritt and James F. Tritt for Petitioner.

No appearance for Respondent.

Hurlbutt, Clevenger, Long, Vortmann & Rauber and James P. Hurlbutt for Real Party in Interest.

**OPINION**

**THAXTER, J.—**

### FACTUAL AND PROCEDURAL BACKGROUND

Garnet Bellamy filed a complaint in Kings County Municipal Court on August 23, 1993, against Central Valley General Hospital, also known as Sacred Heart Hospital, and various Doe defendants. The action was described as one for personal injury and medical malpractice; it alleged two causes of action, one for general negligence and another for premises liability. Bellamy alleged that on May 22, 1992, she was injured at the hospital "when she fell off a rolling X-ray table onto her head. Plaintiff was left unattended and said X-ray table was not secured." In the general negligence cause Bellamy further alleged that the table rolled, and that as medical professionals the defendants had a duty either to secure the table or not leave her unattended. The complaint also alleged compliance with all applicable claims statutes.

The hospital demurred to the complaint on the sole ground that the action was barred by the one-year statute of limitations for personal injury actions.

(Code Civ. Proc.,[1] § 340, subd. (3).) Bellamy opposed the demurrer, arguing that she was subject to the notice requirement for professional negligence actions against health care providers, that she served the required notice within 90 days of expiration of the limitations period, that her time for filing suit was thus extended 90 days after service of notice, and that her complaint was timely filed under section 364, subdivision (d).[2] The, hospital rebutted Bellamy's argument, contending that her action is one based on ordinary negligence, not professional negligence, and thus section 364 is inapplicable.

The municipal court sustained the hospital's demurrer without leave to amend. Bellamy appealed to the superior court from the subsequent judgment dismissing the action. The appellate department of the superior court affirmed the municipal court decision without a written opinion, later denied rehearing and declined Bellamy's request for certification to this court. Bellamy then filed a timely petition for writ of mandate, etc., in this court seeking relief.

Recognizing that further review of the appellate department determination is available only by petition for extraordinary relief, and the classification of similar, hospital-based negligence is the subject of some conflict in the courts of appeal, we exercised our discretion and issued an order to show cause why the relief sought by Bellamy should not be granted. (Cf. *Randone v. Appellate Department* (1971) 5 Cal.3d 536, 542-543 [96 Cal.Rptr. 709, 488 P.2d 13].)

DISCUSSION

*Case Law Distinguishing "Ordinary" and "Professional" Negligence*

The lower court likely relied on the First Appellate District, Division One opinion in *Gopaul* v. *Herrick Memorial Hosp.* (1974) 38 Cal.App.3d 1002

[1]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2]In pertinent part, section 364 provides: "(a) No action based upon the health care provider's professional negligence may be commenced unless the defendant has been given at least 90 days' prior notice of the intention to commence the action. [¶] . . . [¶] (d) If the notice is served within 90 days of the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended 90 days from the service of the notice."

Bellamy's counsel submitted a declaration showing that the notice was served on the hospital on May 24, 1993. Because May 22, 1993, fell on a Saturday, the one-year limitations period was extended to the following Monday, May 24. (§ 12a.) The 90th day after May 24, 1993, was Sunday, August 22. The complaint was filed the following day. Although the hospital claims the pre-suit notice was not timely served, it offers no argument supporting that claim.

[113 Cal.Rptr. 811] in reaching its determination that Bellamy's action was time-barred. Helen Gopaul was diagnosed as suffering from bronchial pneumonia and admitted to the hospital. Her physician ordered X-rays. After a technician took the X-rays, Gopaul was placed on—but not strapped to—a gurney and left unattended while the technician developed the films. While alone, Gopaul experienced a coughing spasm and fell to the floor, injuring her back. Fifteen months later she commenced an action against the hospital, alleging it was negligent in leaving her unattended and unstrapped to the gurney. The trial court entered a judgment of nonsuit in favor of the hospital, finding the action was not filed timely. Gopaul appealed. (*Id.* at p. 1004.)

For purposes of appellate review, the hospital conceded the fall was proximately caused by the negligence of its technician and that it was liable unless the suit was time-barred. The hospital argued since the complaint was not filed within one year, as required for actions to recover damages for personal injury, it was barred. Gopaul maintained the negligence action was based on professional negligence and therefore, under applicable decisional law, the statute of limitations did not begin to run until she either discovered, or should have discovered, the tortious injury. (38 Cal.App.3d at p. 1005.)

While recognizing that "the dividing line between 'ordinary negligence' and 'professional malpractice' may at times be difficult to place" (38 Cal.App.3d at p. 1007), the *Gopaul* court found no difficulty with the facts before it and affirmed the judgment of nonsuit. "The need to strap plaintiff to the gurney while she was ill and unattended would have been obvious to all. The situation required no professional 'skill, prudence and diligence.' It simply called for the exercise of ordinary care." (*Gopaul* v. *Herrick Memorial Hosp.*, *supra*, 38 Cal.App.3d at p. 1007.) "The test reasonably must be whether the negligence occurred within the scope of the 'skill, prudence, and diligence commonly exercised by practitioners of his profession.' [Citation.]" (*Ibid.*)

The *Gopaul* test for professional negligence was cited with approval in *Wasmann* v. *Seidenberg* (1988) 202 Cal.App.3d 752, 757 [248 Cal.Rptr. 744], where the court was called upon to decide whether an attorney has a duty to safeguard property entrusted to him during settlement negotiations by an adverse party. The court answered the question in the affirmative, holding that "[a]n attorney's failure to prevent a client's unauthorized seizure and recordation of a document held in escrow is not negligent *lawyering*: 'The situation required no professional "skill, prudence and diligence." It simply called for the exercise of ordinary care[,]' " citing *Gopaul*.

After *Gopaul* was decided, the Legislature enacted the Medical Injury Compensation Reform Act (MICRA). (Stats. 1975, Second Ex. Sess. 1975-1976, chs. 1, 2, pp. 3949-4007.)[3] As part of that enactment, section 340.5 was amended to set the limitations period in an action against a "health care provider" based upon its alleged "professional negligence" at three years after the date of injury or one year after the plaintiff discovers, or through the exercise of reasonable diligence should have discovered, the injury, whichever occurs first. For purposes of this statute, "professional negligence" is defined as "*a negligent act or omission to act by a health care provider in the rendering of professional services*, which act or omission is the proximate cause of a personal injury . . . , provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital." (§ 340.5, subd. (2), italics added.)[4]

In 1979, faced with a factual situation similar to *Gopaul* but subject to construction under the recently amended section 340.5, another Court of Appeal (Fourth District, Division Two) reached the opposite conclusion and reversed a summary judgment in favor of the health care provider. In *Murillo v. Good Samaritan Hospital* (1979) 99 Cal.App.3d 50 [160 Cal.Rptr. 33], Marie Murillo was sedated and sleeping when she fell out of bed while a "shingles" patient at Good Samaritan Hospital. Murillo alleged staff failed to raise the bedrails on her bed, setting the stage for her later fall and resulting injuries. (*Id.* at pp. 52-54.) Murillo filed her action for damages against the hospital for personal injuries more than one year after the date of the fall, but within a year of the date she alleged she was put on notice her injuries were caused by the fall. (*Ibid.*) The hospital moved successfully for summary judgment, arguing the facts alleged raised only a question of ordinary negligence and the one-year limitations period of section 340 barred the action. (*Murillo v. Good Samaritan Hospital, supra,* 99 Cal.App.3d at p. 54.)

On appeal, the *Murillo* court first determined the hospital was a "health care provider" within the meaning of section 340.5. (*Murillo v. Good Samaritan Hospital, supra,* 99 Cal.App.3d at p. 54.) It determined the decision whether or not to raise the bedrails on the plaintiff's bed came within the defendant hospital's "duty 'to use reasonable care and diligence in safeguarding a patient committed to its charge [citations] and such care and diligence are measured by the capacity of the patient to care for himself.' [Citation.]" (*Id.* at p. 55.)

[3]MICRA contains numerous provisions effecting substantial changes in negligence actions against health care providers.

[4]The same definition appears in various other sections, including section 364, subdivision (f)(2).

On the issue of ordinary negligence versus "professional negligence," the court concluded "whether it was negligent to leave the bedrails down during the night while plaintiff was asleep is a question involving hospital's duties to recognize the condition of patients under its care and to take appropriate measures for their safety. Thus, the question is squarely one of professional negligence (see *Mount Sinai Hosp. of Greater Miami, Inc.* v. *Wolfson* (Fla.App. 1976) 327 So.2d 883, 884-885) and section 340.5 governs the running of the statute of limitations. . . ." (*Murillo* v. *Good Samaritan Hospital*, *supra*, 99 Cal.App.3d at p. 56.)

*Murillo* agreed with the premise in *Gopaul* that "not every act of negligence by a professional is an act of professional negligence, even where the victim is a client[.]" (*Murillo* v. *Good Samaritan Hospital*, *supra*, 99 Cal.App.3d at p. 56.) Hypothetical examples of ordinary, negligence suggested in *Gopaul* (38 Cal.App.3d at p. 1006) such as injury to a patient from a collapsing chair in a doctor's office, or injury to a client from his attorney's negligent driving en route to the courthouse, were deemed "apt." (*Murillo* v. *Good Samaritan Hospital*, *supra*, at p. 56.) But *Murillo* had difficulty with the third example found in *Gopaul*—injury to a hospital patient from a chandelier falling onto his bed. "[T]he professional duty of a hospital, as we have seen, is primarily to provide a safe environment within which diagnosis, treatment, and recovery can be carried out. Thus if an unsafe condition of the hospital's premises causes injury to a patient, as a result of the hospital's negligence, there is a breach of the hospital's duty *qua* hospital." (99 Cal.App.3d at pp. 56-57.) Noting *Gopaul* was decided under law that preceded the enactment of section 340.5, *Murillo* concluded that the result reached in *Gopaul* was incompatible with the definition of professional negligence found in section 340.5: "Under that definition, the test is not whether the situation calls for a high or a low level of skill, or whether a high or low level of skill was actually employed, but rather the test is whether the negligent act occurred in the rendering of services for which the health care provider is licensed. When a seriously ill person is left unattended and unrestrained on a bed or gurney, the negligent act is a breach of the hospital's duty as a hospital to provide appropriate care and a safe environment for its patients." (*Murillo* v. *Good Samaritan Hospital*, *supra*, 99 Cal.App.3d at p. 57.)

The Ninth Circuit Court of Appeals followed *Murillo* in *Taylor* v. *U.S.* (9th Cir. 1987) 821 F.2d 1428, 1432, holding that Letterman Army Hospital had a professional duty to prevent plaintiff's husband from becoming separated from his ventilator, "regardless of whether separation was caused by the ill-considered decision of a physician or the accidental bump of a janitor's broom. . . ."

The Fourth District, Division One, in *Bell* v. *Sharp Cabrillo Hospital* (1989) 212 Cal.App.3d 1034, 1050 [260 Cal.Rptr. 886], also cited the *Murillo* test with approval. Five years later the same division again cited *Murillo* with approval and explicitly rejected *Gopaul*, citing the language defining professional negligence in the later-enacted section 340.5. (*Williams* v. *Superior Court* (1994) 30 Cal.App.4th 318, 325-327 [36 Cal.Rptr.2d 112].) *Williams* "agree[d]" with *Murillo* "that it is not the degree of skill required but whether the injuries arose out of the rendering of professional services that determines whether professional as opposed to ordinary negligence applies." (30 Cal.App.4th at p. 327.)

Finally, the California Supreme Court criticized the analysis in *Gopaul* in *Flowers* v. *Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 1000 [35 Cal.Rptr.2d 685, 884 P.2d 142]. In *Flowers* the trial court granted summary judgment in favor of a hospital and a nurse on an emergency room patient's complaint for negligence. The defendants' expert declared that prevailing standards of care did not require emergency room personnel to raise gurney siderails for patients like Flowers whose condition (bladder pain) did not appear to warrant this precaution. (*Id.* at pp. 995, 1001.) The Court of Appeal reversed. It concluded defendants had negated an action for professional negligence but determined the pleadings were broad enough to state a cause of action for ordinary negligence. (*Id.* at p. 1000.) ■ The Supreme Court reversed and remanded, holding a plaintiff cannot, on the same facts, state causes of action for ordinary negligence as well as professional negligence, as a defendant has only one duty that can be measured by one standard of care under any given circumstances. (*Id.* at p. 1001.)

"[A]s a general proposition one 'is required to exercise the care that a person of ordinary prudence would exercise under the circumstances.' [Citations.] . . .. 'Persons dealing with dangerous instrumentalities involving great risk of harm must exercise a greater amount of care than persons acting in less responsible capacities, but the former are no more negligent than the latter for failing to exercise the required care. . . .' " (*Flowers* v. *Torrance Memorial Hospital Medical Center, supra,* 8 Cal.4th at p. 997, fn. omitted.) "[A] hospital's 'business is caring for ill persons, and its conduct must be in accordance with that of a person of *ordinary prudence* under the circumstances, a vital part of those circumstances being the illness of the patient and incidents thereof.' [Citations], italics added." (*Id.* at p. 998.)

The *Flowers* court added the following to its critique of the lower court opinion: "An additional analytical flaw, derived from the rationale of *Gopaul* v. *Herrick Memorial Hosp., supra,* underlies the decision below. In drawing

the distinction between ordinary and professional negligence, the court in *Gopaul* observed that '[t]he need to strap plaintiff to the gurney while she was ill and unattended would have been obvious to all.' (38 Cal.App.3d at p. 1007.) In other words, it found that the circumstances did not require expert testimony to establish the appropriate standard of care. (*Ibid.*) This reasoning confuses the manner of proof by which negligence can or must be established and the character of the negligence itself, which does not depend upon any related evidentiary requirements." (*Flowers* v. *Torrance Memorial Hospital Medical Center, supra,* 8 Cal.4th at p. 1000.)

While the *Flowers* court declined to resolve the conflict between *Murillo* and *Gopaul* on the question whether a patient's fall from a hospital bed or gurney implicates professional or ordinary negligence in a statutory context "[b]ecause the question [was] not squarely presented," it did state "to the extent either decision may be inconsistent with the analysis herein, it is disapproved." (*Flowers* v. *Torrance Memorial Hospital Medical Center, supra,* 8 Cal.4th at p. 1002, fn. 6.)

Cases from other jurisdictions involving statutes similar to MICRA are not wholly consistent in articulating the dividing line between ordinary and professional negligence for tort claims based on failure to supervise or protect the safety of a patient in a hospital or other health care facility. (See generally, Annot., What Patient Claims Against Doctor, Hospital, or Similar Health Care Provider Are Not Subject to Statutes Specifically Governing Actions and Damages for Medical Malpractice (1991) 89 A.L.R.4th 887, 899, 931-948 (hereafter cited as Annotation).)

*The Complaint Here Sufficiently Alleged Professional Negligence*

■ When reviewing a ruling on demurrer, the court gives the complaint a reasonable interpretation and treats the demurrer as admitting all material facts properly pleaded. "The court does not, however, assume the truth of contentions, deductions or conclusions of law." (*Aubry* v. *Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

Bellamy's complaint does not expressly allege that she was on the X-ray table for the rendering of some professional service, but a reasonable interpretation of her allegations supports that inference. People do not commonly mount X-ray tables in hospitals except for a radiological examination or therapy. The hospital does not contend otherwise. Thus, we will assume that Bellamy was injured either in preparation for, during, or after an X-ray exam or treatment.

Section 340.5 defines professional negligence as "a negligent action or omission . . . in the rendering of professional services." ■ Under the

facts alleged, the hospital was rendering professional services to Bellamy in taking X-rays and she would not have been injured by falling off the X-ray table but for receiving those services. Consequently, under a broad reading of the statute any negligence in allowing her to fall off the X-ray table arose "in the rendering of professional services." (Cf. *Myers* v. *Woodall* (1979) 42 Colo.App. 44 [592 P.2d 1343, 1344] [Colorado medical malpractice statute of limitations applied to actions to recover damages " 'due to alleged negligence or breach of contract in providing care' "; patient, being transported to physical therapy on a cart by hospital employee, was allegedly injured when employee caused cart to collide with metal beam; malpractice limitations period applied; "providing care" contemplated all activities of hospital employees ancillary to and inherently involved in providing medical services to the patient]; Annot., *supra*, 89 A.L.R.4th at pp. 944-945, 946-947.) This result is consistent with *Murillo*: "[T]he test is whether the negligent act occurred in the rendering of services for which the health care provider is licensed." (*Murillo* v. *Good Samaritan Hospital, supra*, 99 Cal.App.3d at p. 57.)

The hospital strongly urges us to reject the *Murillo* test. It argues the test is overbroad and "would make *any* act inside a hospital which causes any harm to a patient or to any person inside a hospital an act of 'professional negligence.' " The hospital criticizes the *Murillo* court's dictum that a negligently maintained, unsafe condition of a hospital's premises which causes injury to a patient falls within professional negligence. According to the hospital, this rationale "obliterates" the word "professional" from the statutory definition, making any negligence by an agent or employee of a health care facility professional negligence.

We do not need to agree with the *Murillo* dictum to apply that court's actual holding in this case. *Murillo*'s facts showed that a patient hospitalized for treatment of shingles on her lower back was placed on a hospital bed and given sedatives and tranquilizers. The alleged negligence was failure of the hospital staff to raise bedrails designed to prevent the patient's falling while she was asleep. On these facts we agree with the court's holding that the case fell within the statutory definition of professional negligence. That holding does not necessarily lead to the further conclusion that any negligent act or omission by a hospital causing a patient injury is professional negligence.

The rationale advanced by the hospital is that expressed in *Gopaul*, that is, if the need for restraint is "obvious to all," the failure to restrain is ordinary negligence. (*Gopaul* v. *Herrick Memorial Hosp., supra*, 38 Cal.App.3d at p. 1007.) We agree with *Murillo* that this standard is incompatible with the

subsequently enacted statutory definition of professional negligence, which focuses on whether the negligence occurs in the rendering of professional services, rather than whether a high or low level of skill is required. (*Murillo* v. *Good Samaritan Hospital, supra,* 99 Cal.App.3d at p. 57.) The *Gopaul* standard also appears impracticable. For example, the need to remove foreign objects, such as sponges, clamps, and surgical instruments, from a patient's body during an operation should be "obvious to all," but the surgeon's negligent failure to do so is unquestionably professional, not ordinary, negligence. (See *Gannon* v. *Elliot* (1993) 19 Cal.App.4th 1 [23 Cal.Rptr.2d 86] [reversible error not to instruct jury it could rely on common knowledge to determine whether leaving a surgical instrument's small rubber or plastic cap in patient's hip following surgery was negligence].)

The hospital also argues that in adopting MICRA the Legislature intended the term "professional negligence" to have the same meaning given it in antecedent case law (including *Gopaul*), which the hospital claims was restricted to "a breach of the duty to provide *professional* skill, procedure and diligence." We disagree.

*Gopaul* relied on a dictionary definition of "malpractice" as being " 'any professional misconduct or any unreasonable lack of skill in the performance of professional or fiduciary duties.' " (*Gopaul* v. *Herrick Memorial Hosp., supra,* 38 Cal.App.3d at p. 1005.) Shortly after that decision the Legislature codified a statutory definition of "professional negligence" which differs considerably from that in *Gopaul.* The statutory definition does not refer to "professional misconduct" or "unreasonable lack of skill." Instead, it includes any "negligent act or omission to act . . . in the rendering of professional services" by a licensed health care provider, if the services are within the scope of the provider's license. (§ 340.5, subd. (2).)

The hospital also seeks to distinguish this case from *Murillo* on the ground that there the plaintiff was asleep after being given sedatives and tranquilizers, but no similar allegations are made here. We agree that a particular patient's condition, including age, state of alertness, and the nature of any injuries or disease is a relevant circumstance which should be considered in assessing the patient's need for supervision and protective measures. But that circumstance bears on the question of whether there was *any* negligence, that is, whether the amount of care given was reasonable. (See *Flowers* v. *Torrance Memorial Hospital Medical Center, supra,* 8 Cal.4th at p. 997 [". . . the amount of care deemed reasonable in any particular case will vary, while at the same time the standard of conduct itself remains constant, i.e., due care commensurate with the risk posed by the conduct taking into consideration all relevant circumstances"].) It does not alter the character of the negligence which is governed by the statutory definition.

That the alleged negligent omission was simply the failure to set a brake on the rolling X-ray table or the failure to hold the table in place, neither of which requires any particular skill, training, experience or exercise of professional judgment, does not affect our decision. We presume that during the course of administering an examination or therapy like that which Bellamy underwent, an X-ray technician may perform a variety of tasks, such as assisting the patient onto the table, manipulating the table into one or more desired positions, instructing the patient to move from one position to another, activating the X-ray machine, removing the photographic plates, assisting the patient from the table, etc. Some of those tasks may require a high degree of skill and judgment, but others do not. Each, however, is an integral part of the professional service being rendered. Trying to categorize each individual act or omission, all of which may occur within a space of a few minutes, into "ordinary" or "professional" would add confusion in determining what legal procedures apply if the patient seeks damages for injuries suffered at some point during the course of the examination or therapy. We do not see any need for such confusion or any indication the Legislature intended MICRA's applicability to depend on such fine distinctions.[5]

We find support on this point in two out-of-state cases. In *Stanley* v. *Lebetkin* (1986) 123 A.D.2d 854 [507 N.Y.S.2d 468], the plaintiff broke her ankle when alighting from her physician's examining table and sued him for damages. The suit was filed more than two years but less than three years after the incident. Under New York law the action was barred if considered one for medical malpractice, but not if considered one for simple negligence. The appellate court affirmed a summary judgment for the defendant, holding that "the duty the defendant is charged with violating arose from the physician-patient relationship and was substantially related to his treatment of the plaintiff. . . . [T]he failure of a doctor or his employee in helping a patient from the diagnostic table is clearly related to the treatment just given, and the duty to help the patient down safely also derives from the same treatment as the doctor-patient relationship." (507 N.Y.S.2d at p. 469.) (But

---

[5]The hospital refers us to *American Bank & Trust Co.* v. *Community Hospital* (1984) 36 Cal.3d 359 [204 Cal.Rptr. 671, 683 P.2d 670], which discussed the legislative history and intent behind MICRA, finding that the Legislature could rationally conclude that high medical malpractice insurance costs "posed special problems with respect to the continued availability of adequate insurance coverage and adequate medical care and could fashion remedies—directed to the medical malpractice context—to meet these problems." (36 Cal.3d at p. 372.) From this the hospital argues that MICRA should be limited to "those cases which involve the application of professional judgement [*sic*] customarily covered under standard policies of medical malpractice insurance." The hospital does not, however, offer any authority showing the risk involved in this case is not customarily covered under such standard policies. In any event, we have no power to insert in the statutory definition limitations not included by the Legislature. (§ 1858.)

see *Rogers* v. *Schuyler* (1990) 158 A.D.2d 318 [551 N.Y.S.2d 5] [patient injured in fall from examining table while giving a blood sample not entitled to medical malpractice panel hearing; physician's negligence in not securing her to table, if established, constitutes simple negligence rather than medical malpractice].)

In *Olsen* v. *Richards* (1989) 232 Neb. 298 [440 N.W.2d 463], the plaintiff-patient alleged she went to her physician's office for an examination and treatment. She sat in the doctor's examination chair, and he moved the headrest down onto her neck, causing injuries. Her action against the doctor was filed nearly four years later and was timely if considered one for ordinary negligence, but barred if one for professional negligence or malpractice. The Nebraska Supreme Court affirmed a judgment dismissing the action after the defendant's demurrer was sustained. The court said: "[W]hen the Legislature enacted the special limitation statute of 2 years on malpractice, it did not intend to separate certain portions of the whole physician-patient relationship and apply a confusing standard of 2 and 4 years to different portions of that relationship, or to require the courts to make such a nebulous and difficult fact separation and determination." (440 N.W.2d at p. 465.)

Bellamy's complaint sufficiently alleges facts amounting to professional negligence, bringing it within section 364 and the other MICRA provisions. The lower courts erred in finding her action barred.

### DISPOSITION

Let a peremptory writ of mandate issue to respondent appellate department of the superior court directing it to vacate its order of January 19, 1996, affirming the judgment of dismissal in Hanford Municipal Court action No. CIV 15085, and to enter a new order reversing said judgment.

Petitioner shall recover her costs in this proceeding.

Martin, Acting P. J., and Wiseman, J., concurred.