Filed 4/23/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ASMA POUZBARIS, | |
| Plaintiff and Appellant, | G048891 |
| v. | (Super. Ct. No. 30-2012-00575537) |
| PRIME HEALTHCARE SERVICES-ANAHEIM, LLP, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Luis A. Rodriguez, Judge. Reversed.

Goldsman Law Offices, Evan A. Blair, Gene J. Goldsman and Aron M. Goldsman for Plaintiff and Appellant.

Carroll, Kelly, Trotter, Franzen, McKenna & Peabody, Thomas M. Peabody, David P. Pruett and Michael E. DeCoster for Defendant and Respondent.

\*         \*         \*

Plaintiff Asama Pouzbaris appeals from the summary judgment entered in favor of defendant Prime Healthcare Services-Anaheim LLP dba West Anaheim Medical Center. Plaintiff's complaint alleged that while she was a patient at defendant's hospital, she slipped and fell on a recently mopped floor that lacked any warning signs. Defendant obtained summary judgment on the ground plaintiff's action was barred by the one-year statute of limitations period imposed by the Medical Injury Compensation Reform Act of 1975 (MICRA) (Stats. 1975, 2d Ex. Sess., ch. 1, § 25, pp. 3969-3970, § 1.192, pp. 3991-3992) under Code of Civil Procedure section 340.5 (all further undesignated statutory references are to this code).

The question on appeal is whether a hospital's purported conduct in mopping a floor and failing to provide warning signs constitutes "professional negligence" within the meaning of section 340.5 rather than ordinary negligence subject to the two-year limitations period under section 335.1. The California Supreme Court recently granted review of a case involving the similar issue concerning a hospital's alleged negligence in allowing a patient's bed rail to collapse. (*Flores v. Presbyterian Intercommunity Hospital* (2013) 213 Cal.App.4th 1386, review granted May 22, 2013, S209836.) We conclude the current action falls within the two-year statute.

FACTS AND PROCEDURAL BACKGROUND

On June 13, 2010, plaintiff was admitted to defendant after complaining of "chest tightness with shortness of breath." She was placed in a room with a private bathroom. Two days later, while still in defendant's care, she used the bathroom to freshen up and change her clothes. Walking back her bed, she slipped and fell, injuring herself. Plaintiff claimed the floor was wet and appeared to have been recently mopped. No warning cones were present. Plaintiff testified in her deposition that shortly after her fall, the cleaning lady said, "'Oh, I know that you fell. I'm so sorry. I'm so sorry.'"

2

Plaintiff admitted she knew of the alleged negligence on June 15, 2010, but did not file her complaint until June 11, 2012. The complaint sought damages for personal injury with a cause of action for premises liability.

Defendant moved for summary judgment, arguing that plaintiff's action was time-barred by section 340.5. The trial court agreed and granted the motion. It ruled the action was one "for professional negligence" because the negligence was "committed in the act of rendering services for which the hospital is licensed," which was namely "to use reasonable care and diligence in safeguarding a patient committed to its charge. So whether [p]laintiff fell because she was not supervised or assisted on her trip to the restroom, or because a 'cleaning lady' mopped her room while she was in the restroom is irrelevant for this analysis: in either event, the claim concerns [d]efendant's duties to take appropriate measures for patient safety, and concerns rendering of services for which [d]efendant is licensed." Thus, "under *Murillo v. Good Samaritan Hospital* (1979) 99 Cal.App.3d 50 [(*Murillo*)] and its progeny, because the claim is one brought by a patient against a hospital for an alleged injury sustained in the course of the hospital's care for her it is a claim for professional negligence."

We disagree with defendant's analysis and reverse the judgment.

DISCUSSION

*1. Standard of Review*

Summary judgment is appropriate where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).) A defendant moving for summary judgment "bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established' or," as with the statute of limitations defense here, that there is a complete defense to the action. (*Aguilar v. Atlantic Richfield Co*.

3

(2001) 25 Cal.4th 826, 850.)  We "consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court, and all [uncontradicted] inferences reasonably deducible from the evidence" (§ 437c, subd. (c)), and "are not bound by the trial court's stated reasons or rationale.  Instead, we review the summary judgment without deference to the trial court's determination of questions of law."  (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163.)

*2.  Inadequate Record*

Defendant asserts plaintiff provided an inadequate record on appeal to support her claim an objection to defendant's separate statement of undisputed material facts should have been sustained.  That may be true but it is immaterial.

*3.  Which Limitations Period Applies Under the Facts Alleged*

*3.1  Statutes*

MICRA's limitations period, section 340.5, states:  "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first."  Under this statute, "'Professional negligence' means a negligent act or omission to act by a health care provider *in the rendering of professional services*, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital."  (§ 340.5, subd. (2), italics added.)

The statute on which plaintiff relies, section 335.1, is outside of MICRA and pertains to ordinary negligence claims for personal injury. It provides that "[a]n action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another" must be commenced "[w]ithin two years." (§ 335.1.)

The various statutes comprising MICRA were enacted because of the rapidly rising costs of medical malpractice insurance. (*Delaney v. Baker* (1999) 20 Cal.4th 23, 33-34.) The legislative intent in shortening the statute of limitations for MICRA cases "was to give insurers greater certainty about their liability for any given period of coverage, so that premiums could be set to cover costs." (*Young v. Haines* (1986) 41 Cal.3d 883, 900.)

Thus, the applicable statute of limitations depends on how the negligence is characterized. The determinative question is whether plaintiff's slip and fall occurred as a result of professional negligence, as that term is defined by section 340.5, or ordinary negligence, in which case the action is governed by the two-year limitations period under section 335.1.

### 3.2  Pre-MICRA Case Law

The main pre-MICRA case discussed by the parties is *Gopaul v. Herrick Memorial Hosp.* (1974) 38 Cal.App.3d 1002 (*Gopaul*). In that case, a plaintiff left unattended fell off a gurney to which she had not been strapped. At the time, the period for filing an action for ordinary negligence ran from the time of the negligent act, while a suit based on professional negligence ran from when the plaintiff should have discovered the cause of the injury. The trial court granted a nonsuit judgment against the plaintiff following its determination that "'professional malpractice' was not involved in the defendant hospital's tortious conduct, and that the reasons for the extended statute of limitations for such malpractice were wholly inapplicable here. The need to strap plaintiff to the gurney while she was ill and unattended would have been obvious to all.

5

The situation required no professional 'skill, prudence and diligence.' It simply called for the exercise of ordinary care." (*Id*. at p. 1007.)

In affirming, *Gopaul* explained "that inherent in the concept of 'professional malpractice' is that it must have occurred in the 'performance of professional or fiduciary duties.' It follows that not every tortious injury inflicted upon one's client or patient or fiducial beneficiary amounts to such malpractice. No reasonable person would suggest that 'professional malpractice' was the cause of injury to a patient from a collapsing chair in a doctor's office, or to a client from his attorney's negligent driving en route to the court house, or to a hospital patient from a chandelier falling onto his bed. Such injuries would, no doubt, have proximately resulted from 'ordinary negligence,' but they would not be brought about from 'professional malpractice.'" (*Groupal*, *supra*, 38 Cal.App.3d at pp. 1005-1006.)


*3.3 Post-MICRA Case Law*

Discussed extensively by both parties is *Murillo*, *supra*, 99 Cal.App.3d 50. There, the plaintiff fell out of her bed due to the hospital's alleged failure to raise the bed rails. *Murillo* reversed a summary judgment in the defendant hospital's favor, but stated: "the question whether it was negligent to leave the bedrails down during the night while plaintiff was asleep is a question involving hospital's duties to recognize the condition of patients under its care and to take appropriate measures for their safety. Thus, the question is squarely one of professional negligence [citation] and section 340.5 governs the running of the statute of limitations." (*Id*. at p. 56.)

*Murillo* disagreed with *Gopaul* because it had been decided before section 340.5's enactment and its result was "incompatible with the definition of professional negligence found in section 340.5. Under that definition, the test is not whether the situation calls for a high or a low level of skill, or whether a high or low level of skill was actually employed, but rather the test is whether the negligent act occurred in the

6

rendering of services for which the health care provider is licensed. When a seriously ill person is left unattended and unrestrained on a bed or gurney, the negligent act is a breach of the hospital's duty as a hospital to provide appropriate care and a safe environment for its patients." (*Murillo*, *supra*, 99 Cal.App.3d at p. 57.)

*Murillo* agreed with *Gopaul*, however, that no professional malpractice obtains when injury is caused by "a collapsing chair in a doctor's office, or . . . from [an] attorney's negligent driving en route to the court house." (*Murrillo*, *supra*, 99 Cal.App.3d at p. 56.) But as to an injury caused by a chandelier falling onto a patient's bed, *Murillo* had "difficulty . . . because the professional duty of a hospital . . . is primarily to provide a safe environment within which diagnosis, treatment, and recovery can be carried out. Thus if an unsafe condition of the hospital's premises causes injury to a patient, as a result of the hospital's negligence, there is a breach of the hospital's duty *qua* hospital." (*Id*. at pp. 56-57.)

Defendant urges us to follow *Murillo* while plaintiff claims the case was overruled by *Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992 (*Flowers*). But to the extent *Flowers* overruled any portion of *Murillo*, it did not involve *Murillo*'s analysis of what constitutes professional, as opposed to ordinary, negligence for statute of limitations purposes.

In *Flowers*, the plaintiff fell off the side of a gurney on which the side rail had not been raised by the attending nurse. The Court of Appeal reversed the summary judgment in favor of the defendant hospital and nurse, the majority agreeing "that defendants had negated any 'professional negligence,'" but finding "the pleadings 'broad enough to encompass a theory of liability for ordinary as well as professional negligence' because the manner of her injury did not involve a breach of duty to provide professional skill or care." (*Flowers*, *supra*, 8 Cal.4th at p. 996, fn. omitted.) The Supreme Court reversed and remanded, holding that "the same factual predicate can[not] give rise to two independent obligations to exercise due care according to two different standards

7

[because] this is a legal impossibility: a defendant has only *one* duty, measured by *one* standard of care, under any given circumstances." (*Id.* at p. 1000.)

In doing so, *Flowers* cited *Gopaul* and *Murillo* noting they had "addressed the question of whether a patient's fall from a hospital bed or gurney constituted 'ordinary' or 'professional' negligence." (*Flowers*, *supra*, 8 Cal.4th at p. 999.) But "[b]ecause the question [was] not squarely presented, [*Flowers*] decline to resolve the conflict between *Murillo* . . . and *Gopaul* . . . on the question of whether a patient's fall from a hospital bed or gurney implicates 'professional' or 'ordinary' negligence in a statutory context. However, to the extent either decision may be inconsistent with the analysis herein, it [was] disapproved." (*Id.* at p. 1002, fn. 6.)

Plaintiff also relies on *Bellamy v. Appellate Department* (1996) 50 Cal.App.4th 797 (*Bellamy*), which she claims likewise "rejected application of the *Murillo* dicta test and analyzed whether ordinary negligence or professional negligence applied to an inquiry into whether the acts and circumstances complained of arose from the professional skill, diligence and prudence for which the medical provider is licensed." In *Bellamy*, the plaintiff sued a hospital for general negligence and premises liability, after she allegedly fell off an X-ray table on which she "was left unattended" and unsecured. (*Id.* at p. 799.) The trial court sustained the defendant's demurrer without leave to amend on the ground the plaintiff's action was barred by the former one-year statute of limitations for personal injury actions. (Former § 340, subd. (3).) In opposition to the demurrer, the plaintiff had contended she was subject to the notice requirement for professional negligence actions against health care providers and had served the required notice within 90 days of expiration of the statute of limitations period, which extended her time for filing suit for 90 days after service of notice thereby making her complaint timely filed under section 364, subdivision (d). The Court of Appeal agreed and reversed. (*Bellamy*, at p. 809.)

8

*Bellamy* reasoned that section 340.5 defines professional negligence as "'a negligent action or omission . . . in the rendering of professional services'" (*Bellamy*, *supra*, 50 Cal.App.4th at p. 805), and a broad reading of the facts showed "the hospital was rendering professional services to" the plaintiff "either in preparation for, during, or after an X-ray exam or treatment." (*Id*. at pp. 805-806.) According to *Bellamy*, "[t]his result is consistent with *Murillo*: '[T]he test [under *Murillo*] is whether the negligent act occurred in the rendering of services for which the health care provider is licensed.'" (*Id*. at p. 806.) Because the complaint sufficiently alleged facts amounting to professional negligence, the court concluded it fell within section 364 and the complaint was timely filed. (*Id*. at p. 809.)

In contrast to defendant here, but much like the plaintiff in this case, the defendant hospital in *Bellamy* argued the *Murillo* test was "overbroad and 'would make *any* act inside a hospital which causes any harm to a patient or to any person inside a hospital an act of "professional negligence."' The hospital criticize[d] the *Murillo* court's dictum that a negligently maintained, unsafe condition of a hospital's premises which causes injury to a patient falls within professional negligence. According to the hospital, this rationale 'obliterates' the word 'professional' from the statutory definition, making any negligence by an agent or employee of a health care facility professional negligence." (*Bellamy*, *supra*, 50 Cal.App.4th at p. 806.)

*Bellamy* responded that it need not "agree with the *Murillo* dictum to apply that court's actual holding in this case. *Murillo's* facts showed that a patient hospitalized for treatment of shingles on her lower back was placed on a hospital bed and given sedatives and tranquilizers. The alleged negligence was failure of the hospital staff to raise bedrails designed to prevent the patient's falling while she was asleep. On these facts we agree with the court's holding that the case fell within the statutory definition of professional negligence. That holding does not necessarily lead to the further conclusion

9

that any negligent act or omission by a hospital causing a patient injury is professional negligence." (*Bellamy*, *supra*, 50 Cal.App.4th at p. 806.)

 *Bellamy* thus agreed with *Murillo* that the issue is controlled by the statutory definition of professional negligence in section 340.5, "which focuses on whether the negligence occurs in the rendering of professional services, rather than whether a high or low level of skill is required." (*Bellamy*, *supra*, 50 Cal.App.4th at pp. 806-807.) *Bellamy* continued: "That the alleged negligent omission was simply the failure to set a brake on the rolling X-ray table or the failure to hold the table in place, neither of which requires any particular skill, training, experience or exercise of professional judgment, does not affect our decision. We presume that during the course of administering an examination or therapy like that which Bellamy underwent, an X-ray technician may perform a variety of tasks, such as assisting the patient onto the table, manipulating the table into one or more desired positions, instructing the patient to move from one position to another, activating the X-ray machine, removing the photographic plates, assisting the patient from the table, etc. Some of those tasks may require a high degree of skill and judgment, but others do not. Each, however, is an integral part of the professional service being rendered. Trying to categorize each individual act or omission, all of which may occur within a space of a few minutes, into 'ordinary' or 'professional' would add confusion in determining what legal procedures apply if the patient seeks damages for injuries suffered at some point during the course of the examination or therapy. We do not see any need for such confusion or any indication the Legislature intended MICRA's applicability to depend on such fine distinctions." (*Id*. at p. 808, fn. omitted.)

### 3.4. Conclusion

 We agree with *Bellamy* and *Murillo* that the statutory definition of professional negligence in section 340.5 requires us to determine "whether the negligence

10

occurs in the rendering of professional services" and not the level of skill required for each individual task. (*Bellamy*, *supra*, 50 Cal.App.4th at pp. 806-807.) For purposes of section 340.5, subdivision (2), "professional negligence" is defined as "a negligent act or omission to act by a health care provider in the rendering of professional services." Because mopping the floor and putting a warning sign up did not occur during the rendering of such services, plaintiff sufficiently alleged facts to support an ordinary negligence claim so as to bring her action within the two-year limitations period of section 335.1.

We disagree with *Murillo*'s dictum that a negligently maintained, unsafe condition of a hospital's premises which causes injury to a patient qualifies as professional negligence. Rather, injury to a patient from a falling chandelier, or a recently mopped floor, does not fall within the meaning of professional negligence as defined in section 340.5. (*Gopaul*, *supra*, 38 Cal.App.3d at pp. 1005-1006.) For the same reason, we are not persuaded by defendant's citations to various authorities to establish that it "is a health care provider within the definition of MICRA" with duties to its patients including ensuring their safety. Again, the critical determination is whether the negligence occurred in the rendering of professional services. (§ 340.5, subd. (2); *Bellamy*, *supra*, 50 Cal.App.4th at pp. 805-806.) Plaintiff's complaint, alleging she was injured when she slipped and fell on a recently mopped floor, did not occur in the rendering of professional services but rather sounds in ordinary negligence. Therefore, the action is governed by the two-year statute of limitations (§ 335.1), making the lawsuit timely.

11

DISPOSITION

The judgment is reversed.  Plaintiff shall recover her costs on appeal.

**CERTIFIED FOR PUBLICATION**

RYLAARSDAM, ACTING P. J.

WE CONCUR:

BEDSWORTH, J.

MOORE, J.