**Janell VICK, Appellant,**

v.

**The METHODIST EVANGELICAL HOSPITAL, INC., Appellee.**

Court of Appeals of Kentucky.

Sept. 23, 1966.

As Modified on Denial of Rehearing Dec. 9, 1966.

Robert E. Hogan, Louisville, for appellant.

Wm. O. Guethlein, A. J. Deindoerfer, Boehl, Stopher, Graves & Deindoerfer, Louisville, for appellee.

JOE P. CLARK, Special Commissioner.

This is an action filed by Janell Vick, plaintiff, against The Methodist Evangelical Hospital, Inc., of Louisville, Kentucky, defendant, for damages in the sum of $10,000 as a result of the plaintiff getting out of or falling out of a bed at defendant's hospital, allegedly caused by the negligence of the employees of defendant. The trial court directed a verdict for the defendant, and plaintiff appeals.

Plaintiff entered the hospital of the defendant after midnight November 18, 1963, for the purpose of childbirth, and was in labor when she entered the hospital. The child was delivered at 2:34 a. m.

According to the photostatic copy of the hospital "Delivery Note" on Mrs. Janell Vick, from the time the plaintiff entered the hospital until the birth of the child at 2:34 a. m. she was given the following: Tuinol, three grains ( to reduce apprehension, to produce sleep); phenergan, which makes the tuinol a little stronger; demerol, fifty milligrams; scapalomine, a drug of amnesia, so that the patient would not remember very much of her labor; and after being completely dilated, a saddle block anesthetic. After delivery she was given two cc's of 2X duladumone.

After the birth of the child, plaintiff was placed in the recovery room where she remained until 4:10 a. m., and was then carried to hospital room 328 which is located on the same floor. She talked with her husband between 3:00 and 3:30 a. m. but was not fully alert.

The medical records disclose that she was under sedatives for some time after the birth of the child and was left alone in a private room for one hour and five minutes after receiving medication which could have produced sleep or unconsciousness for at least three hours longer.

According to the testimony of Dr. Gillim:

"Q. And what—over what period of time, Doctor, considering that you gave Mrs. Vick this dosage of medication, over what period of time would that be effective upon her, considering her build and her age and—and general condition?

"A. This is extremely variable. The amount of medication a patient receives many times does not depend upon their size—I've seen small people take very large quantities of medication to control these people in labor. I've also seen large people take a small amount. Different individuals have different reactions to drugs.

"Q. Is that akin to the man who's affected by a small amount of intoxicants as opposed to the other fellow who can drink much more without any appreciable effect?

"A. Yes."

The plaintiff entered the hospital for the purpose of childbirth and was of the opinion that she would be properly cared for and looked after by the nurses and doctors, which was the duty of the hospital and for which she paid. The record presents factual issues with respect to plaintiff's condition and the nature of the attention she received.

The record discloses that the guard rails on the hospital bed were up at the top or near the plaintiff's head, and that the bottom of the rails slanted down to where the patient could get in and out of bed. This would allow the patient to get in and out of the bed and not require help or assistance in doing so.

While plaintiff testified she was in such a condition that she did not know exactly what happened, it was established that she fell on the floor or against some hard object, resulting in a cut on her chin and an injury to the back of the head, both of which required surgery. Her testimony would support the inference that these injuries resulted from two different falls. Considering all the circumstances, in our opinion there was sufficient evidence to justify a jury finding that defendant's employees did not exercise due care to protect this patient from injury while under sedation.

In Garfield Memorial Hospital v. Marshall, 92 U.S.App.D.C. 234, 204 F.2d 721, 37 A.L.R.2d 1270, it was held that even though there was expert testimony that the hospital's physicians and nurses acted in accordance with good and accepted standards of hospital service, the circum-

stances were such that the jury could reject this evidence and find negligence in the treatment of the patient.

■ In Miners Memorial Hospital Ass'n of Ky. v. Miller, Ky., 341 S.W.2d 244, the court held that a patient admitted to a hospital operated for private gain is entitled to such reasonable care and attention for his safety as his mental and physical condition known or discoverable by the exercise of ordinary care may require.

■ It is apparent, as shown by the testimony of the nurses and the chart, that the sedatives given the plaintiff were in such amount as to support a finding that the plaintiff was not oriented or alert and was not properly attended to prevent her getting out or falling out of bed.

We conclude that the court erred in giving a directed verdict for the defendant.

The judgment is reversed, with directions to grant a new trial.

MOREMEN, WILLIAMS and STEWART, JJ., dissenting.

When it was held in Mullikin v. Jewish Hospital Association of Louisville, Ky., 348 S.W.2d 930, that a charitable hospital was liable for torts committed, we believed that few anticipated the case would stand for the proposition that a hospital would be held to standards of service other than those which were in accordance with good and accepted practices for other similar institutions in the community. The opinion of the majority clearly imposes an additional responsibility upon a hospital.

The facts in this case in most respects resemble those presented in Miners Memorial Hospital Association of Kentucky v. Miller, Ky., 341 S.W.2d 244, where a patient fell and broke her wrist while attempting to climb into her bed. The main question concerned whether a special nurse should have been present in the room at the time, and we said this:

"In the instant case we are of the opinion that there was no evidence of any circumstances from which it could reasonably be said that the hospital was under a duty to have a special nurse in the room with Mrs. Miller more than three hours after she had regained consciousness. Though she may not now remember the events just preceding her injury, it is uncontroverted that she had made two previous trips to the bathroom and was responsive to conversation. Under the circumstances, it is scarcely possible to resist the conclusion that the patient was well able to summon a nurse had she chosen to do so. The mere fact that the accident happened is no indication of negligence on the part of the hospital."

We believe it is common knowledge that most patients are under sedation at certain periods during hospitalization and we must face the question whether each hospital should require constant attendance by a nurse during those periods. We think not.

There was nothing unusual about Mrs. Vick's accouchement, or the treatment of her during subsequent hours. She was given the same care given other patients under similar circumstances. She was under sedation and it could be reasonably assumed that she would sleep for several hours. A "buzzer" was close at hand if a nurse was needed. (She used the buzzer after she fell.) It was not shown that any equipment was defective. The whole case seems to have been based upon the supposition that a nurse should have been in constant attention. There was no proof that such a practice was standard. Most people are aware, we believe, that if 24-hour nursing service is required special nurses must be hired by the patient. In this period of a dire nurse shortage, a requirement that the hospital furnish 24-hour constant attendance to all patients

under sedation would be impossible to fulfill.

There is no series of negligent acts in this case as was shown in Garfield Memorial Hospital v. Marshall, 92 U.S. App.D.C. 234, 204 F.2d 721, 37 A.L.R.2d 1270. There, the experts testified that the hospital's doctors and nurses acted in accordance with good and accepted standards of hospital care, and it was argued that since they had so acted there was no showing of negligence. The Court said: "The jury did not, and was not required to, accept this somewhat startling statement." The statement was startling when one reads how the patient in that case was treated.

We have no such facts here and we therefore respectfully dissent.