JOHN BENNETT *vs.* WINTHROP COMMUNITY HOSPITAL. March 14, 1986. *Negligence,* Hospital, Expert opinion. *Medical Malpractice,* Hospital, Expert opinion.

The plaintiff, John Bennett, after trial, had a jury verdict[1] in the amount of $8,000 against the defendant, Winthrop Community Hospital, for injuries sustained by him as the result of negligent custodial handling after he was received for emergency treatment. Upon motion for judgment n.o.v., however, a judge of the Superior Court entered judgment for the defendant for the stated reason that the plaintiff had not called an expert to give an opinion, and thereby, according to the judge, failed to make out a sufficient case to go to the jury.

The record on appeal consists of a statement under Mass.R.A.P. 8(d), as appearing in 378 Mass. 934 (1979) (agreed statement as the record on appeal), together with the hospital record.

1. Following is the substance of the plaintiff's case as testified to by witnesses called by him and supplemented by the hospital record which he offered in evidence:

Bennett left home at 5:30 P.M., August 31, 1979, and returned home at 12:30 A.M. the next day. He took a number of alcoholic drinks and went to bed. At 2:00 A.M. his wife found him crawling on the floor. He was staggering, slurring his speech, and mumbling. An ambulance was called and around 5:00 A.M. Bennett was taken to the hospital. He was "restrained" as well as "strapped" while in the ambulance.

It appears that after Bennett arrived, the emergency service was informed about his behavior at home, and also learned that, besides the alcohol imbibed before and after he came home, he had taken a mix of drugs. Evidently Bennett was not lethargic. He was given Narcan, which counters the effects of an overdose of drugs and brings the person to consciousness.

---

[1] In response to special questions, the jury found defendant 100% negligent and the defendant's negligence the proximate cause of the plaintiff's injuries.

Mrs. Bennett testified that she found Bennett in an emergency room. He was "talking ragtime," not making any sense. There were tubes in his nose. One bedrail was up, the other down. He was not otherwise confined. Mrs. Bennett sat there for quite awhile. She saw no one attending Bennett. She left. When she returned a few hours later, Bennett had suffered his injuries. Now his hands and feet were tied down.

A hospital record regarding Bennett's admission stated: "While in the Emergency Room, pt. fell from stretcher. He was attended at the time but he was extremely heavy. He fell despite efforts to catch him. He injured his lip and chin. Sutures were then used to sew up the laceration before transport to floor." This statement appears next to the signature of a nurse, Arthur St. Andre.

A discharge report by Dr. C. Liberman stated: "This patient was brought to E.R. having imbibed freely in alcohol. He also had taken 2 mg. Valium tablets apparently, then later on had taken a good many Dalmane and also some Robaxin, the exact amounts of which were not known. When he arrived at the E.R. he was quite lethargic and was responsive to some degree. His stomach was washed out thoroughly and his condition was such that it was felt that he should be admitted. While in the E.R. he attempted to get off the stretcher and he fell striking his face, at which time he lost central incisor and cut his chin. The chin was sutured. He was admitted to my service as I was on call for the day. . . . Final Dx: Drug overdose, Dalmane, Valium, Robaxin, Ethanol, Laceration of the chin."

Bennett testified to his taking alcohol and drugs. From the time he returned home he recalled nothing until he awoke at the hospital with a tube in his nose. He started to pull the tube, but blacked out. Regaining consciousness, he became aware that his chin was stitched and two of his teeth had been knocked out. He had some recollection of falling to the floor, but could not say how·his injuries came about. He described his injuries and the treatment.

On the part of the hospital, only the testimony of Arthur St. Andre, the nurse above mentioned, was offered. St. Andre, after testifying to his experience in nursing, said that he was continuously with Bennett from the time he was wheeled into the hospital on a stretcher. When Bennett reached an emergency room, he was on a bed or stretcher with both siderails up. St. Andre administered Narcan. He was standing next to the bed when Bennett was roused to consciousness. Bennett pulled an intravenous needle from his arm and sat up. When St. Andre put his hands on Bennett and tried to press him back to the bed, Bennett whacked St. Andre with his right arm and St. Andre fell backwards across a desk. Bennett scooted to the foot of the bed and fell forward hitting his chin. At no point, according to St. Andre, did he see Mrs. Bennett.

2. With regard to the possible need for expert testimony, many decisions on the problem in the very context of bed-care of patients can be found in the annotations, Necessity of expert evidence to support action against hos-

pital for injury to or death of patient, 40 A.L.R. 3d 515, 542 (1971), and Hospital's liability for patient's injury or death as result of fall from bed, 9 A.L.R. 4th 149 (1981), both with supplements. These arrays of cases suggest the following analysis or breakdown.

Sometimes a hospital, sued for negligence, justifies on a ground, the validity of which cannot be fairly appraised by an unassisted jury: abstruse knowledge, beyond the ken or experience of laymen, is needed to reach a judgment whether restraint (or a certain kind of restraint) was required or advisable. Assume the defendant says that in the case of a particular asthmatic, it was right to use no restraint (or a mild restraint) even though this created a probability of injury, because the psychological effects on such a patient of a restraint outweighed the physical risk. Without advice on the physiology and psychology of asthma in relation to the patient, a jury would be at sea. Cf. *Ford* v. *Vanderbilt Univ.*, 40 Tenn. App. 87, 95-97 (1955). A similar scenario can be supposed in the case of a schizophrenic patient. See *M.W.* v. *Jewish Hosp. Assn.*, 637 S.W.2d 74, 76 (Mo. App. 1982). We may observe, too, that where the precautions taken (or omitted) were in fact the result of a deliberate judgment in the particular case on the part of a physician or skilled staff, there will be a tendency to require expert testimony as a condition of allowing a recovery. See *Butler* v. *Caldwell Memorial Hosp.*, 90 Idaho 434, 440-441 (1966); *Carrigan* v. *Sacred Heart Hosp.*, 104 N.H. 73, 77 (1962). But see *Alaggia* v. *North Shore Univ. Hosp.*, 92 A.D.2d 532, 532 (N.Y. 1983).

The larger number of reported decisions regarding bed-care do not implicate any abstruse factors and do not follow upon deliberated choices, and here expert opinion has regularly been held unnecessary; indeed, in some situations such testimony may be diversionary and ought to be excluded if offered. See *Cramer* v. *Theda Clark Memorial Hosp.*, 45 Wis. 2d 147, 151 (1969). Suppose a hospital has a rule for nurses, prescribing in practical terms when (and which) security measures should be taken, a rule that may be accepted as the reasonable standard of conduct. A jury is capable of determining without expert aid whether the rule was actually followed. Such was our case of *Polonsky* v. *Union Hosp.*, 11 Mass. App. Ct. 622 (1981).[2] See also *Smith* v. *West Calcasieu-Cameron Hosp.*, 251 So. 2d 810, 812-813 (La. App. 1971). But cf. *Hilzendager* v. *Methodist Hosp.*, 596 S.W.2d 284, 286 (Tex. Civ. App. 1980). Then we come to garden-variety cases where an unrestrained patient fell from a hospital bed, and attendance was needed but lacking at the time of need. See *Louie* v. *Chinese Hosp. Assn.*, 249 Cal. App. 2d 774, 790 (1967); *Washington Hosp. Center* v. *Martin*, 454 A.2d 306, 309 (D.C. 1982); *Vick* v. *Methodist Evangelical*

---

[2] The hospital rule spoke of "confused or disoriented" patients who must be provided with siderails. The drug Dalmane had been administered, whose label warned that it might cause staggering and falling.

*Hosp., Inc.,* 408 S.W.2d 428, 429 (Ky. 1966); *Puls* v. *St. Vincent Hosp.,* 36 Wis. 2d 679, 688 (1967). Or cases where a typical restraint (say bedrails) was required and was not furnished, or was half-furnished, or furnished in a slipshod manner. See *Howard* v. *Research Hosp. & Medical Center, Inc.,* 563 S.W.2d 111, 112 (Mo. App. 1978); *Smith* v. *Gravois Rest Haven, Inc.,* 662 S.W.2d 880, 883 (Mo. App. 1983); *Gordon* v. *Harbor Hosp., Inc.,* 275 A.D. 1047 (N.Y. 1949). Such cases do not call for the paraphernalia of experts, and, as we have noted, the complications brought in by such testimony might on occasion distort rather than improve the jury's judgment. These cases are called "administrative," "ministerial," "routine," or the like, as distinguished from medical or professional. See *Quick* v. *Benedictine Sisters Hosp. Assn.,* 257 Minn. 470, 483 (1960); *M.W.* v. *Jewish Hosp. Assn.,* 637 S.W.2d at 76; *Norris* v. *Rowan Memorial Hosp., Inc.,* 21 N.C. App. 623, 626 (1974); *Cramer* v. *Theda Clark Memorial Hosp.,* 45 Wis. 3d at 150. But cf. *Mossman* v. *Albany Medical Center Hosp.* 34 A.D.2d 263, 264 (N.Y. 1970).

3. In the present case, considering the plaintiff's frenetic conduct before removal to the hospital (knowledge of which was communicated to the hospital), the restraints put on the plaintiff during the ambulance trip, and the administration of Narcan to him, it is clear that confinement was called for after arrival in emergency. Now we are to take the evidence with the usual indulgence in favor of the plaintiff as the party who won the jury verdict. See *International Fid. Ins. Co.* v. *Wilson,* 387 Mass. 841, 847 (1983). In this view we may disregard St. Andre's testimony. Mrs. Bennett's testimony shows only one sidebar up, and no nurse in attendance. The hospital record does not mention confinement. The fact of injury consequent upon a fall is incontestable.

The defendant hospital recites only St. Andre's testimony and assumes its truth. This is quite wrong. We may note, in passing, that St. Andre's entry in the hospital record is different from his testimony. The hospital goes on to cite generalities about expert testimony, and decisions rather distant on their facts from those at bar.

The verdict therefore stands; it was error for the judge to allow judgment n.o.v.

It should not be inferred from the present decision that the safe course for a hospital to take is always to impose severe restraints in order to avoid lawsuits. Undue severity, besides being a betrayal of the patient, may itself entail liability. The practice should be one of reason which takes account, as far as may be feasible, of the needs of individual patients.

The judgment appealed from is reversed, and judgment is to enter in accordance with the jury verdict.

*So ordered.*

*Dante J. DeMichaelis* for the plaintiff.
*Barbara Hayes Buell* for the defendant.