17 A.3d 310

**Wanda DITCH, Administratrix of Estate of Catherine S. Verdier, Appellant**

v.

**WAYNESBORO HOSPITAL, Appellee.**

Supreme Court of Pennsylvania.

Argued April 14, 2010.

Decided Jan. 18, 2011.

---

Daniel Lloyd Hessel, James David Golkow, Philadelphia, Earl Merritt Lentz, for Wanda Ditch, Administratrix of Estate of Catherine S. Verdier.

Christopher Thomson, West Chester, Robert A. Graci, Harrisburg, Eckert Seamans Cherin & Mellot, LLC, for Waynesboro Hospital.

## *ORDER*

PER CURIAM.

**AND NOW,** this 18th day of January, 2011, the Order of the Superior Court is **AFFIRMED.**

Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Justice TODD files a dissenting statement.

Justice TODD, dissenting.

I respectfully dissent from the Majority's affirmance of the Superior Court's decision by *per curiam* order, which terminates a potentially meritorious cause of action for failure to file a certificate of merit. In doing so, the Court declines to confront and resolve a significant issue of statewide importance that has not been addressed by our Court the question of how to define the distinction between ordinary negligence and professional negligence in the health care setting. This is a question our sister states have themselves struggled to resolve.

In this matter, the complaint—premised upon the basic allegation that a patient fell from her bed—raises, in my view, a claim of garden-variety negligence, and not professional negligence, therefore, not requiring a certificate of merit. Instead, the lower tribunals, now with this Court's approval, have converted the requirement of a certificate of merit, intended as a shield against frivolous professional negligence actions, into a procedural sword to strike potentially valid

claims sounding in common negligence. Thus, for the reasons set forth below, (1) I would address the gray area of how to define the distinction between ordinary negligence and professional negligence in this context; and (2) on the merits, I would find the complaint before us raises, at least in part, a cause of action based in ordinary negligence, and, I would thus conclude the Appellant was not required to file a certificate of merit. I would, therefore, reinstate her complaint.

## I. Background

On March 23, 2002, Catherine Verdier, age 85,[1] suffered a stroke. She was taken to Waynesboro Hospital ("Appellee") in Waynesboro, Pennsylvania. Verdier was admitted to Appellee's care. Around midnight, on March 23, 2002, Verdier fell from her hospital bed, struck her head on the floor, and subsequently died, after suffering a right orbital fracture and a subdural hematoma—a fractured skull and resulting bleeding of her brain.

Thereafter, Appellant Wanda Ditch, as administrator of Verdier's estate, filed an action against Appellee, claiming damages under Pennsylvania's Wrongful Death and Survival Acts. 42 Pa.C.S.A. §§ 8301, 8302. Appellee filed preliminary objections, to which Appellant filed an amended complaint. In her amended complaint, Appellant alleged that Verdier died as a result of injuries sustained in a fall from her bed. According to Appellant, Verdier's injuries were caused by the negligence of Appellee, acting through its agents, by failing to ensure that proper restraints were in place to prevent Verdier from falling from her bed while being transported to her room; leaving Verdier unattended while being transported; failing to use reasonable and necessary safety devices to ensure that Verdier would not fall from her bed while being transported; and allowing Verdier to fall from her bed while being transported. Amended Complaint at ¶ 10.

1. Verdier's age is not stated in the complaint; however, the Herald–Mail, a newspaper serving Franklin County, dated March 29, 2002, indicates that she was born July 28, 1916, and, thus, was 85 when she passed away.

Appellee filed a Praecipe for Entry of Judgment Non Pros pursuant to Pa.R.Civ.P. 1042.6. The basis for this pleading was Appellant's failure to file a certificate of merit as required for actions alleging professional negligence. Pa.R.Civ.P. 1042.3. The trial court granted Appellee's motion. In response, Appellant filed a Petition to Open and/or Strike the Judgment of Non Pros on the basis she only asserted a claim of simple negligence, did not file a professional liability action, and, thus, was not required to file a certificate of merit. Additionally, Appellant maintained the filing of her amended complaint rendered the original complaint void, and thus, she had 60 days from the filing of the amended complaint in which to file a certificate of merit if so required.

The Court of Common Pleas of Franklin County denied Appellant's petition. The court first confronted the question of whether Appellant's action raised a claim of ordinary negligence or of professional negligence. As correctly noted by the trial court, only if Appellant raised the latter type of claim would she be required to file a certificate of merit. According to the trial court, the essential inquiry in determining which type of negligence was at issue was whether the claim pertains to conduct which occurred within the course of a professional relationship, and whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience.

Based upon its understanding of the difference between ordinary negligence and professional negligence, the trial court concluded the amended complaint asserted a claim of professional liability. Important to the trial court's determination, the pleadings averred Appellee did not use the proper restraints to keep Verdier from falling out of bed and that she was left unattended by staff. In Paragraph 11 of the amended complaint, Appellant listed the names of physicians and other agents whom she believed to have acted negligently in connection with this incident. According to the trial court, the amended complaint was carefully drafted to avoid specifying who did what and under what circumstances, but implicated medical evaluation, diagnosis, care and treatment, rather than

ordinary slip and fall or premises liability. The trial court distinguished a patient receiving care at a hospital from a delivery person or other non-patient injured while at the hospital, noting that persons in the emergency department must have attended to Verdier and made the decision to have her moved to another room, and also determined that Verdier did not require restraint and decided to leave her unattended. According to the trial court, these actions were an integral part of providing medical treatment and, on some level, implicated medical judgments.

Moreover, the trial court found that averments in the complaint and amended complaint required an expert's evaluation in order to provide a basis for the action as a jury would need to be educated as to the risks of transporting a stroke victim from one department to another, which would include an explanation of whether such persons, in the experience of medical personnel, tend to move around on a stretcher or other transport device such that applying restraints of some kind was standard procedure as a safety precaution. Thus, the trial court concluded an expert familiar with stroke victims and hospital procedures would have been necessary because the absence of both restraints and constant supervision during transport was not a matter which was so simple and obvious as to be within the ordinary experience and knowledge of the lay juror. Finding the claim to sound in professional medical malpractice, the trial court held that the failure to file a certificate of merit was fatal to Appellant's action.[2]

On appeal, the Superior Court affirmed the trial court, concluding Appellant stated a claim sounding in professional negligence. Initially, the court reviewed the elements for medical malpractice and ordinary negligence, and noted that court's prior case law explaining the distinguishing characteristics regarding a medical malpractice claim was that which occurred within the course of a professional relationship and

---

2. The trial court also determined, *inter alia*, the period within which the certificate of merit or motion for extension of time must be filed runs from the date of filing of the original complaint. Thus, the trial court concluded Appellee's preliminary objections did not toll the 60–day filing requirement under Pa.R.Civ.P. 1042.3(a).

raised questions of medical judgment beyond the realm of common knowledge and experience. The Superior Court noted Appellant alleged in her amended complaint that Appellee did not properly restrain Verdier during transport and that Appellee's employee left Verdier unattended before her fall. Related thereto, the court reasoned that someone in the emergency room with medical knowledge made the decision to transport Verdier to a hospital room and to transport Verdier without restraints. According to the Superior Court, these actions were an integral part of providing medical treatment, and on some level, implicated medical judgment.

We granted allocatur, limited to the following two issues:

(1) Whether a certificate of merit must be filed within 60 days of the filing of the original complaint, notwithstanding the filing of preliminary objections and/or an amended complaint?

(2) Whether the complaint and amended complaint raise a professional negligence claim which requires the filing of a certificate of merit?

*Ditch v. Waynesboro Hosp.*, 594 Pa. 36, 934 A.2d 1150 (Pa. 2007) (order).

Before our Court, Appellant argues that, in her complaint and amended complaint, she did not allege a claim of professional liability against Appellee, but, rather, alleged only a cause of action based upon ordinary negligence. According to Appellant, the critical fact underlying her complaint and amended complaint is that Ms. Verdier fell out of her hospital bed and sustained injuries as a result of that fall. Appellant asserts a fall from a hospital bed does not involve a deviation from professional standard of care and does not raise an issue of medical judgment beyond the realm of common knowledge and experience. As she alleged only ordinary negligence, Appellant contends she was not required to file a certificate of merit. Moreover, Appellant offers that, in failing to analyze all of the allegations in the complaint and amended complaint, the lower tribunals ignored Pa.R.Civ.P. 1020 which permits causes of action to be pled in the alternative. Indeed, Appel-

lant submits, a complaint may allege both professional negligence and ordinary negligence against the same defendant, citing *Rostock v. Anzalone*, 904 A.2d 943 (Pa.Super.2006) (holding regarding complaint alleging both professional negligence and ordinary negligence for failure to send copies of diagnostic studies, claims of ordinary negligence would survive even in the absence of a certificate of merit).  Thus, Appellant maintains, even if it were to accept the Superior Court's position that allegations regarding a lack of restraints, leaving the victim unattended, and failing to hire and train a competent medical staff involved the exercise of medical judgment, the court should not have dismissed the entire case;  rather, the court should have preserved the claim that Appellee failed to prevent or caused Verdier's fall.

Moreover, Appellant argues that a certificate of merit is required only where medical judgment is beyond the realm of common knowledge and experience;  thus, the trial court erred in dismissing the action simply because it believed the complaint and amended complaint involved claims of medical malpractice.  According to Appellant, the court was also required to discern whether such claims were beyond the realm of common knowledge and experience.  Appellant submits that, under any set of circumstances, it is within the realm of common knowledge and experience that a stroke victim should not be left alone without restraints to fall from a bed, and any jury can make this determination.

Appellee counters that, while a case of first impression, issues regarding the use of restraints, particularly of a stroke patient, require medical judgment.  As such, expert testimony is required to support the claim, rendering it a medical professional liability action, requiring the filing of a certificate of merit.  Here, according to Appellee, the Superior Court properly found that, although Appellant did not allege that the victim was receiving medical treatment at the time she was being transferred from the emergency room to the hospital room, her claim arose out of a professional relationship, because the conduct at issue constituted an integral part of the process of rendering medical treatment.  Moreover, Appellee

points out the Superior Court concluded that expert testimony was needed to prove it was negligent for failing to properly restrain the victim and for failing to properly train its staff in the proper procedures in transporting patients. Appellee suggests that, while Pennsylvania courts have not addressed whether expert testimony is necessary to determine if a patient should be restrained, other jurisdictions have concluded that it is a complex medical determination which requires expert testimony. Appellee maintains the types of restraints and monitoring a patient needs will depend upon the medical condition of the patient, and suggests that "a stroke patient who is not completely in charge of her mental and physical capabilities may need restraints and monitoring" but, urges that such a decision must be made by a physician. Appellee's Brief at 16. Thus, according to Appellee, a medical expert is necessary to render an opinion on whether the failure to restrain and/or monitor the patient was a breach of the applicable duty of medical care.

## II. The Question of Ordinary Versus Professional Negligence for Purposes of the Certificate of Merit Requirement

Rule 1042.3(a) provides:

(a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff ... shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either

(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allega-

tions that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa.R.Civ.P. 1042.3(a).[3] Thus, the Rule requires a certificate of merit where there is an allegation that a "licensed professional" deviated from "an acceptable professional standard." Appellant does not dispute that Appellee qualified as a licensed professional, which includes a health care provider, Pa. R.Civ.P. 1042.1(b)(1)(i). Yet, she asserts her complaint sets forth only a claim of ordinary negligence, and no allegations that professional standards were not met; thus, she contends no certificate of merit was needed.

In addition to the text, the circumstances surrounding the adoption of Rule 1042.3 informs the proper reach of the Rule regarding whether a certificate of merit is necessary in this matter. Rule 1042.3, one in a series of rules that govern procedure in a civil action in which a professional liability claim is asserted,[4] was born as a result of the increased frequency in which malpractice actions of questionable merit were being commenced. The rule sought to avoid the burdens that such frivolous claims imposed upon litigants and the courts. *Womer v. Hilliker*, 589 Pa. 256, 266, 908 A.2d 269, 275 (2006). Thus, our Court desired to set forth an orderly procedure to "identify and weed non-meritorious malpractice claims from the judicial system efficiently and promptly." *Id.*

As noted above, and as expressly stated by the parties and the Superior Court, our Court has not spoken to the issue of what constitutes ordinary negligence and what is professional negligence in this context. Recently, however, in the realm of the engineering profession, our Court set forth the procedure to be followed in determining whether a certificate of merit is

---

3. Although Rule 1042 has been amended, subsection (a) has not changed.

4. The Rules regarding professional liability actions are set forth in Pa.R.Civ.P. 1042.1–1042.72.

required, and also spoke to the question of whether a claim sounds in professional negligence or alleges only ordinary negligence. *Merlini v. Gallitzin Water Auth.*, 602 Pa. 346, 980 A.2d 502 (2009).

In *Merlini*, Mary Rose Merlini filed a complaint against an engineering firm, the water authority, and a contractor. She alleged that the contractor, working with the engineering firm and under the direction and supervision of the water authority, came upon her property bordering State Route 4001 in Cambria County and, without right-of-way, easement, or permission, constructed a water line on her property, thereby impairing its use. The defendants filed a praecipe for judgment of *non pros*, asserting Merlini alleged a professional liability claim without filing a certificate of merit, and judgment was entered against her. Merlini filed a petition to open the judgment of *non pros*, arguing her cause of action sounded in ordinary negligence. The trial court denied her motion. On appeal, the Superior Court, in finding for Merlini, looked to, *inter alia*, a Michigan Supreme Court decision to explain the distinction between ordinary and professional negligence, concluding there are two questions in determining ordinary versus professional negligence: (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of professional judgment beyond the realm of common knowledge and experience. *Merlini v. Gallitzin Water Authority*, 934 A.2d 100, 104–05 (Pa.Super.2007) (citing *Bryant v. Oakpointe Villa Nursing Centre, Inc.*, 471 Mich. 411, 684 N.W.2d 864, 871 (2004)).

Before our Court, my distinguished colleague, Justice Eakin, writing for the majority, considered the difference between ordinary negligence and professional malpractice. He looked to the definition of medical malpractice as used by—the Superior Court the "unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from

the rendition of professional medical services." *Id.* at 354, 980 A.2d at 506 (citation omitted). Furthermore, he noted "the most distinguishing feature of professional malpractice is the need for expert testimony to clarify complex issues for a jury of laypersons." *Id.* (citations omitted). Thus, our Court considered whether the claims dealt directly with professional services, and whether the claims required expert testimony. Applying these concepts to the facts before it, our Court found, as did the Superior Court in that case, that, while the defendant's actions occurred while performing professional services, the issue the plaintiff raised was not one of professional judgment beyond the scope of common knowledge and experience. While our Court in *Merlini* spoke to the distinction between ordinary negligence and professional negligence for purposes of determining the requirement of a certificate of merit, as noted above, we did so in the context of the engineering profession.

Our Court has not spoken to this important issue in the discrete area of health care, generally, or within the ambit of hospital injuries in particular. Our lower courts, however, have addressed the issue in the medical context, but have come to differing results. *Compare Smith v. Friends Hosp.,* 928 A.2d 1072 (Pa.Super.2007) (claim of sexual assault by employees of hospital, while occurring within the course of a professional relationship, did not raise questions of medical judgment beyond the realm of common knowledge and experience, and, thus, no certificate of merit required); *Swift v. Northeastern Hosp. of Philadelphia,* 456 Pa.Super. 330, 690 A.2d 719 (1997) (determining plaintiff's claim that she slipped and fell on water on floor in emergency room restroom raised claim of premises liability and not malpractice) *with Rostock v. Anzalone,* 904 A.2d 943 (Pa.Super.2006) (action for failure to transmit radiographic studies taken after an automobile accident revealing the presence of a mass in lung, or failure to investigate, sounded in professional malpractice and not ordinary negligence); *Yee v. Roberts,* 878 A.2d 906 (Pa.Super.2005) (allegations that dental employee negligently caused

acid-based etching solution to spill on plaintiff's face resulting in chemical burns arose in context of professional dental treatment, and, thus, required certificate of merit); *Grossman v. Barke,* 868 A.2d 561 (Pa.Super.2005) (plaintiff, who suffered injuries due to fall, after physician directed her to get on examination table, then left the room, asserted liability based upon defendant's professional knowledge, as a physician, and intended to proceed on medical malpractice theory of negligence).

Similarly, other states have considered the difference between ordinary negligence and professional negligence in the medical context, and have reached varying conclusions. Importantly, and while not an exhaustive list, it appears a majority of states have concluded that hospital fall injuries raise an issue of ordinary negligence and do not require expert testimony. For example, numerous courts have concluded that, with respect to hospital fall injuries, only ordinary negligence is implicated. *See, e.g., Friedmann v. New York Hosp.-Cornell Med. Ctr.,* 65 A.D.3d 850, 884 N.Y.S.2d 733 (2009) (claim concerning patient's leg ruptured after striking bed rail while aides prepared patient for dinner and adjusting bedding sounded in negligence rather than malpractice); *Quintanilla v. Coral Gables Hosp.,* 941 So.2d 468 (Fla.Dist.Ct. App.2006) (claim nurse negligently spilled hot tea on patient resulting in burns on leg and thigh was not a direct result of receiving medical care or treatment by a hospital employee, and, thus, raised a claim of simple negligence); *Mobley v. Hirschberg,* 915 So.2d 217 (Fla.Dist.Ct.App.2005) (cause of action concerning dental assistant's dislodging x-ray machine arm and striking plaintiff patient in face, did not need to comply with medical malpractice procedures); *Banfi v. Am. Hosp. for Rehabilitation,* 207 W.Va. 135, 529 S.E.2d 600 (2000) (claim by stroke victim, who was not permitted to leave bed and who was found injured, lying on floor of room, did not require expert testimony as the applicable standard of care was within the common knowledge of the average lay jury); *McGraw v. St. Joseph's Hosp.,* 200 W.Va. 114, 488 S.E.2d 389

(1997) (claim of negligence concerning patient's fall while hospital personnel attempted to assist patient into bed did not require expert testimony, consistent with majority of cases addressing hospital fall incidents which do not require expert testimony, and collecting cases); *Sloan v. St. Francis Hosp.*, 1996 WL 697970, 1996 Conn.Super. LEXIS 3132 (cause of action alleging injury while being transported on gurney from emergency room to patient's room did not allege injury caused by medical malpractice, as the acts were not in the course of medical treatment and did not relate to the exercise of medical judgment, and, thus, did not require a good faith certificate); *Jones v. Bates*, 261 Ga. 240, 403 S.E.2d 804 (1991) (patient's claim that he suffered injuries from a lamp from which the heat shield had been removed during surgery was not necessarily one of medical malpractice, and, thus, should not have been dismissed); *Rogers v. Schuyler*, 158 A.D.2d 318, 551 N.Y.S.2d 5 (1990) (injuries to jaw, face, and neck when plaintiff fell from examining table while giving blood sample did not allege medical malpractice requiring medical expert opinion, but alleged only simple negligence); *Bennett v. Winthrop Cmty. Hosp.*, 21 Mass.App.Ct. 979, 489 N.E.2d 1032 (1986) (plaintiff who fell from stretcher and suffered injuries raised claims that did not require expert testimony, noting majority of decision concerning bed care did not require such testimony and were administrative, ministerial, or routine and, thus, were distinguishable from medical or professional negligence); *Rewis v. Grand Strand Gen. Hosp.*, 290 S.C. 40, 348 S.E.2d 173 (1986) (hospital's negligence in allowing patient to fall out of bed did not require expert testimony); *Newhall v. Central Vermont Hosp.*, 133 Vt. 572, 349 A.2d 890 (1975) (allegation of nurses' failure to respond to patient's call light did not raise issue that was technical or beyond the common knowledge of a lay person); *Gopaul v. HerrickMem. Hosp.*, 38 Cal.App.3d 1002, 113 Cal.Rptr. 811 (Cal.Ct.App.1974) (need to restrain patient on gurney did not involve professional malpractice); *Cramer v. Theda Clark Mem. Hosp.*, 45 Wis.2d 147, 172 N.W.2d 427, 428 (1969) ("The standard of nonmedical, adminis-

trative, ministerial or routine care in a hospital need not be established by expert testimony because the jury is competent from its own experience to determine and apply such a reasonable care standard").

Conversely, other decisions have found hospital fall injuries to raise issues of professional negligence. *See, e.g., Indian River Mem. Hosp., Inc. v. Browne,* 44 So.3d 237 (Fla.Dist.Ct. App.2010) (fall from stretcher alleges claim in medical malpractice); *Santana v. St. Vincent Catholic Med. Ctr. of New York,* 65 A.D.3d 1119, 886 N.Y.S.2d 57 (2009) (claims of failure to assess supervision, nursing care, and security concerning injury from fall from bed raised issues of medical malpractice and not ordinary negligence); *Robinson v. Med. Ctr. of Cen. Georgia,* 217 Ga.App. 8, 456 S.E.2d 254 (1995) (fall from bed due to side rail being down and unsecured was question of professional negligence); *Stanley v. Lebetkin,* 123 A.D.2d 854, 507 N.Y.S.2d 468 (1986) (claim regarding ankle fracture suffered while alighting from physician's examining table arose from physician-patient relationship and substantially related to treatment of patient, and, thus, alleged medical malpractice); *Murillo v. Good Samaritan Hosp.,* 99 Cal.App.3d 50, 160 Cal.Rptr. 33 (Cal.Ct.App.1979) (failure to raise bed rails did not implicate ordinary negligence).

Thus, from the above, it becomes abundantly clear that whether a claim concerning a patient's fall in a hospital or medical facility sounds in ordinary negligence or professional negligence has been a vexing issue for the lower courts of this Commonwealth and our sister states. Moreover, as this Court has not yet done so, it is an issue that we should confront.

### III. Appellant's Complaint Alleged Ordinary Negligence

Consistent with *Merlini,* and the terms of Rule 1042.3, I believe the proper approach in discerning whether a claim alleges a deviation from "an acceptable professional standard" in the health care setting—i.e., whether a cause of action sounds in ordinary negligence or professional negligence—

should include an analysis of whether the actions complained of involve technical complexity or esoteric issues involving medical judgment beyond the realm of common knowledge and experience, or are matters of nonmedical, administrative, ministerial, or routine service, which a jury is competent to determine.

Turning to the specific averments made in Appellant's complaint, it is plain to me that Appellant raises a cause of action sounding in ordinary negligence.[5] Specifically, in her amended complaint, Appellant avers that the victim died as a result of injuries sustained in a fall from her bed. Amended Complaint at ¶ 3. More specifically, and as noted above, Appellant claims that Verdier was left unattended, and that Appellee failed to ensure that proper restraints were in place; failed to use reasonable safety devices; and allowed her to fall from her bed. Amended Complaint at ¶ 10. Finally, Appellee contends Verdier ultimately died "[a]s a direct and proximate result of the injuries she sustained after falling from her bed." Amended Complaint at ¶ 12.

Falling from a hospital bed does not implicate medical skills associated with specialized training that concern *accepted professional standards*. Indeed, it is evident that this question is not one of great technical complexity, but, rather, involves a matter of nonmedical, administrative, ministerial, or routine service. Moreover, while Appellant's claims occurred within the course of Verdier's stay at a hospital, Appellant's assertions do not raise questions involving medical judgment beyond the realm of common knowledge and experience, and, in my mind, do not raise questions of medical judgment at all.

Even accepting, *arguendo*, that, in certain circumstances not present here, allegations regarding a lack of restraints, leaving the victim unattended, and failing to use necessary

---

**5.** In determining whether there was a legitimate excuse for the failure to file a certificate of merit, a court is to look at the specific averments made in the complaint. *Merlini*, 602 Pa. at 353, 980 A.2d at 506. This analysis was a question of law of which our standard of review was *de novo*, and our scope of review was plenary. *Id.*

safety devices may sound in professional negligence, allowing an 85–year–old stroke victim to fall from a bed raises only questions of ordinary negligence, and the lower tribunals erred in holding otherwise. As a complaint may allege both professional negligence and ordinary negligence against the same defendant, at a minimum, this single claim of negligence for allowing Verdier to fall from her bed while being transported should survive. *Rostock v. Anzalone*, 904 A.2d 943 (Pa.Super.2006) (concerning complaint alleging both professional negligence and ordinary negligence for failure to send copies of diagnostic studies, claims of ordinary negligence would survive even in the absence of a certificate of merit).

We require our procedural rules to be "liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable." Pa.R.Civ.P. 126. The certificate of merit requirement in Rule 1042.3 was intended to be a shield against frivolous claims of professional liability against medical and other professionals alleging a deviation from acceptable professional standards, but never as a sword to strike down potentially meritorious claims sounding in ordinary negligence. The rationale espoused by the Superior Court, and now left standing by our Court, in essence deletes the word "professional" from the language of Rule 1042.3, exposing any complaint alleging negligence by an agent or employee of a health care facility, even a claim as legally unexceptional as a patient falling from a bed, to dismissal if it does not contain a certificate of merit. Indeed, not every act by a professional or his or her subordinates involves professional standards or judgments. Some simply require common sense. Although the requirement of a certificate of merit is well-intentioned, the dismissal of a complaint due to the lack of a certificate, where ordinary negligence is alleged, unjustly denies a party resolution of his or her claims on their merits—an outcome never intended by enactment of the rule. *See generally* Melinda L. Stroub, Note, *The Unforeseen Creation of a Procedural Minefield— New Jersey's Affidavit of Merit Statute Spurs Litigation and*

*Expense in Its Interpretation and Application,* 34 Rutgers L.J. 279 (2002).

## IV. Conclusion

In sum, this Court should address the distinction between ordinary negligence and professional negligence in the health care setting and, in my view, this case presents an excellent opportunity to do so. Here, in light of the purpose of Rule 1042.3, the ambiguity concerning whether a patient fall injury is a claim in ordinary negligence or professional negligence, the liberal interpretation of our rules, and the nature of at least one of the claims asserted, I believe it is patently unfair to dismiss Appellant's complaint in its entirety due to the failure to file a certificate of merit. For the foregoing reasons, I respectfully dissent.