J-A03024-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHARLES GALEANO & PATRICIA GALEANO | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | | |
| v. | | |
| SUSQUEHANNA HEALTH SYSTEM AND WILLIAMSPORT REGIONAL MEDICAL CENTER | | |
| Appellees | | No. 1182 MDA 2016 |

Appeal from the Order Entered May 12, 2016
In the Court of Common Pleas of Lycoming County
Civil Division at No: 14-00629

BEFORE:  LAZARUS, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY STABILE, J.:                    **FILED MAY 17, 2017**

Charles Galeano ("Charles") and Patricia Galeano ("Patricia") (collectively "Appellants") appeal from the May 12, 2016 order entered in the Court of Common Pleas of Lycoming County granting summary judgment in favor of Susquehanna Health System and Williamsport Regional Medical Center ("Appellees").  Appellants contend the trial court erred by classifying their premises liability claims against Appellees as professional negligence claims requiring medical expert testimony.  Following careful review, we affirm in part, vacate in part, and remand.

In **Grossman v. Barke**, 868 A.2d 561 (Pa. Super. 2005), this Court explained our standard and scope of review from the grant of summary judgment as follows:

> Summary judgment properly is granted after the close of the relevant pleadings "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report" and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2(1). The standard of our review of an order granting or denying a motion for summary judgment pursuant to Rule 1035.2 is well established. In reviewing an order granting summary judgment, an appellate court must examine the record in the light most favorable to the non-moving party. We will reverse only if there has been an error of law or a clear abuse of discretion. Our scope of review is plenary with regard to questions of law. However, we are not bound by the trial court's conclusions of law and, instead, we may reach our own inferences and conclusions.

**Id.** at 566 (quotations and citations omitted).

Examining the record in the light most favorable to Appellants—and in particular the pleadings and Charles' deposition, we can summarize the underlying facts as follows. Charles was born on June 25, 1954, and was 57 years old on March 20, 2012, the date he fell at the Williamsport Regional Medical Center, a facility that housed a physical therapy department. Charles had a medical history that included myriad conditions and procedures, including bariatric surgeries and the placement of stents after suffering heart attacks. Most recently, he had undergone amputation of his great right toe in December 2011. He had been off his feet the majority of

the time after his December 2011 surgery and was at the medical center's physical therapy department for evaluation prior to his fall.

Charles acknowledged he was tired at the end of his evaluation. The therapist offered him a wheelchair to get to his car but he declined, indicating he just wanted to rest for a few minutes. When he left the department, he walked with a cane as he and Patricia headed toward the exit of the building, following the same path they took upon arrival. When he came upon an automated mat that opened double doors in the hallway,

> half of my shoe was on the metal [edge of the mat] and half of it was on the mat. . . . [W]hen my right foot . . . came down and hit the mat, the front of my shoe, it stuck. . . . [W]hen my foot stopped, I guess my weight carried me forward and I lost my balance and I threw my cane out, . . . and I spun around and then fell backwards.

Deposition of Charles Galeano, 7/24/15, at 142-144. As a result of the fall, Charles sustained injuries including a fractured left ankle.

Appellants initiated an action against Appellees and filed a complaint titled "Civil Action – Complaint (Premises Liability)." Complaint, 5/27/14, at 1. After identifying the parties and alleging that both Appellees were health care providers, Appellants set forth factual allegations concerning the events of March 20, 2012, including references to Charles' compromised physical condition. *Id.* at ¶¶ 1-25. Appellants then alleged:

26. [Appellees] were negligent and careless in:

    (a)   Failing to take steps to correct the hazardous conditions resulting from the utilization of flooring

materials with a significant disparity in skid resistance;

(b) Failing to conduct inspections of the flooring area in the corridor of the facility leading to the entrance;

(c) Failing to warn of the dangerous conditions of the flooring;

(d) Failing to recognize that [Charles] required assistance and support to safely exit the facility; and

(e) Failing to properly facilitate the required wheelchair escort and/or assistance for [Charles] to safely exit the facility.

*Id.* at ¶ 26. In Count I of the complaint, Charles claimed he suffered injuries and damages "[a]s a direct result of the aforesaid negligence and carelessness of [Appellees]." *Id.* at ¶¶ 27-32. In Count II, Patricia asserted a consortium claim against Appellees. *Id.* at ¶¶ 33-36. Appellants then presented Count IV[1] in which they alleged the following claims titled "Corporate Liability" against Appellees:

43. [Appellees] were careless and negligent and failed in their duty to provide safety to [Charles] as follows:

(a) Failing to properly select, place, train and supervise personnel with respect to safety in their facilities; and

(b) Failing to establish and implement proper protocols and to ensure the safety of patients in their facilities, including the use of wheelchairs and other transportation assistance.

_____

[1] There is no Count III in the Complaint.

- 4 -

*Id.* at ¶¶ 37-43.

On June 4, 2014, Appellees filed an answer to the complaint denying Appellants' assertions of negligence and raising various affirmative defenses. Appellants filed their reply to new matter on June 27, 2014.

The trial court issued a number of scheduling orders and granted requests for continuance, the last of which placed the case on the June 2016 trial list. Application for Continuance and Order, 1/25/16, at 1-2. By separate order of the same date, deadlines for motions *in limine* and expert reports were established and a pre-trial conference was set for April 26. Order, 1/25/16, at 1. On April 25, 2016, Appellees filed their motion for summary judgment asserting, for the first time, that Appellants' claims were medical negligence claims and that Appellants' expert, a professional civil engineer, was not qualified to testify as to the applicable standard of care and medical causation. Alternatively, Appellees sought preclusion of the expert's testimony. On the same day, Appellees filed, for the first time, a notice of intention to enter judgment of *non pros* for failure to file a certificate of merit pursuant to Pa.R.C.P. 1042.3.[2]

The trial court heard oral argument on May 9, 2016, and granted summary judgment by order entered on May 12, 2016. The trial court concluded that Appellants' claims sounded in professional negligence; that

---

[2] *See* n. 4, *infra*.

Appellants' expert was not qualified to offer opinions relating to medical judgment or causation; and that Appellants could not prove their case without a medical expert. Trial Court Opinion, 5/12/16, at 2-4.

Appellants filed a motion for reconsideration of the May 12, 2016 order. By order entered July 6, 2016, the trial court denied the reconsideration motion. This timely appeal followed. The trial court did not order the filing of a Rule 1925(b) statement of errors complained of on appeal but did file a Rule 1925(a) opinion on July 20, 2016. In that opinion, the trial court indicated that the reasons for its grant of summary judgment were set forth in its May 12, 2016 opinion.

In this appeal, Appellants ask us to consider three issues:

1. Whether the Complaint of Appellants[] stated a premises liability cause of action against Appellees[], separate and apart from a claim of medical malpractice, based upon the hazard presented by an automatic door mat?

2. Whether premises liability expert, Joseph Graci, P.E., was qualified to testify that the automatic door mat which [Charles] encountered presented a hazard to persons with ambulatory impairments which caused his fall?

3. Whether the interests of justice required the [c]ourt to consider Appellees' Summary Judgment Motion filed late when the issue presented could have and should have been raised earlier?

Appellants' Brief at 4.

As reflected above, we view the record in the light most favorable to Appellants and will reverse only if there has been an error of law or clear abuse of discretion. *Grossman*, 868 A.2d at 566. However, we are not

bound by the trial court's conclusions of law and may reach our own inferences and conclusions. *Id.*

In their first two issues, Appellants argue that their complaint stated a premises liability claim, separate from a claim of medical negligence, and that Appellants' engineering expert was qualified to testify that the mat presented a hazard to Charles and individuals similarly situated. Appellants contend that the trial court erred in its conclusion that Appellants raised medical negligence claims and that their expert was unqualified to testify. They contend the trial court's grant of summary judgment on those grounds is unsupported by the allegations in the complaint and that the trial court's reliance on this Court's decision in *Grossman* is misplaced.

In *Grossman*, the plaintiff's decedent was injured when she fell from an examining table while her doctor was out of the room. *Id.* at 564. There, the doctor who knew of his patient's history of diabetes and dizziness, left the room after directing the woman to get on the exam table. *Id.* The trial court determined the plaintiff presented a medical malpractice claim and granted summary judgment in favor of the physician for lack of expert testimony to support causation. *Id.* at 565. On appeal, the plaintiff argued the trial court erred in granting summary judgment because her expert's testimony supported the plaintiff's negligence claims and medical expert testimony was not required. *Id.* We explained:

Plaintiff argued to the trial court . . . that the case was one of ordinary negligence, not medical malpractice. The trial court, however, treated the case as a medical malpractice case. . . . Although the basic elements of both ordinary negligence and medical malpractice are the same, medical malpractice has distinguishing characteristics. Medical malpractice is further defined as the "unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." **Toogood**[ **v. Owen J. Rogal, D.D.S., P.C.**, 824 A.2d 1140, 1145 (Pa. 2003).] The underlying elements of negligence in a medical malpractice claim, mirroring those of a basic negligence claim, **see Estate of Swift** [**by Swift v. Northeastern Hosp.**, 456 Pa. Super. 330, 690 A.2d 719, 722 (1997)], are more specifically described as a "duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of the harm." **Toogood**, 824 A.2d at 1145 (quoting **Hightower-Warren v. Silk,** 548 Pa. 459, 698 A.2d 52, 54 (1997)).

One of the most distinguishing features of a medical malpractice suit is, in most cases, the need for expert testimony, which may be necessary to elucidate complex medical issues to a jury of laypersons. In other words, "[b]ecause the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons[,] a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury." **Id.**

**Grossman**, 868 A.2d at 566-67.

Before addressing the need for expert testimony, this Court in **Grossman** first considered whether the case should be characterized as one of ordinary negligence or medical malpractice. In absence of guidance from our Supreme Court outlining factors to be weighed when determining whether a complaint sounds in ordinary negligence or medical malpractice, the Court indicated that the averments of the complaint would determine the

theory asserted. *Id.* at 568. The Court looked to case law from New York and Michigan, two jurisdictions that have addressed the ordinary negligence vs. medical malpractice issue, and noted that "[i]n describing the difference between the two types of claims, certain New York state courts, for example, have indicated that conduct is considered to be malpractice when it constitutes medical treatment, that is, when it involves diagnosis, care and treatment by licensed medical professionals." *Id.* at 569 (internal quotations, brackets and ellipses omitted).

Although our Supreme Court has not considered the "ordinary negligence vs. medical malpractice" issue, the issue was addressed at length in a dissenting opinion authored by Justice Todd in ***Ditch v. Waynesboro Hospital***, 17 A.3d 310 (Pa. 2011) (Todd, J. dissenting). In ***Ditch***, the majority issued a *per curiam* order affirming this Court's ruling, which in turn affirmed the trial court's order entering judgment of *non pros* for failure to file a certificate of merit in a case involving claims on behalf of a stroke victim who fell out of her hospital bed and later died. *Id.* at 311-12. The appellant unsuccessfully argued that her complaint asserted ordinary negligence rather than medical negligence against a hospital. *Id.* at 312-13.

In her dissent, Justice Todd expressed her belief that the appellant's claims were garden-variety negligence claims, not medical negligence claims requiring a certificate of merit. Justice Todd noted that by affirming this Court's ruling in a *per curiam* order, "the Court declines to confront and

resolve a significant issue of statewide importance that has not been addressed by our Court[, *i.e.*,] the question of how to define the distinction between ordinary negligence and professional negligence in the health care setting." ***Id.*** at 310 (Todd, J., dissenting). Justice Todd embarked on a review of cases from our Court that have produced inconsistent results, as well as a review of cases from a multitude of our sister states, concluding that:

> [T]he proper approach in discerning whether a claim alleges a deviation from "an acceptable professional standard" in the health care setting—*i.e.*, whether a cause of action sounds in ordinary negligence or professional negligence—should include an analysis of whether the actions complained of involve technical complexity or esoteric issues involving medical judgment beyond the realm of common knowledge and experience, or are matters of nonmedical, administrative, ministerial, or routine service, which a jury is competent to determine.

***Id.*** at 318.[3]

_____

[3] Justice Todd surveyed nearly two dozen cases, two of which are cases from our Court, that we include here for illustrative purposes, noting:

> Our Court has not spoken to this important issue in the discrete area of health care, generally, or within the ambit of hospital injuries in particular. Our lower courts, however, have addressed the issue in the medical context, but have come to differing results. ***Compare*** . . . ***Swift v. Northeastern Hosp. of Philadelphia***, 456 Pa. Super. 330, 690 A.2d 719 (1997) (determining plaintiff's claim that she slipped and fell on water on floor in emergency room restroom raised claim of premises liability and not malpractice) ***with*** . . . ***Grossman v. Barke***, 868 A.2d 561 (Pa. Super. 2005) (plaintiff, who suffered injuries due to fall, after physician directed her to get on examination table,

*(Footnote Continued Next Page)*

Although our Supreme Court has not addressed the "ordinary vs. professional negligence" issue in the context of health care providers, it has addressed similar situations in the context of whether a Pa.R.C.P. 1042.3 certificate of merit is required.[4]  For instance, in ***Merlini ex rel. Merlini v.***

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯

> then left the room, asserted liability based upon defendant's professional knowledge, as a physician, and intended to proceed on medical malpractice theory of negligence).

*Id.* at 316 (additional citations omitted).

[4] **Pa.R.C.P. 1042.3. Certificate of Merit** provides, in pertinent part:

(a)  In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either

(1)  an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2)  the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

(3)  expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

- 11 -

*Gallitzin Water Authority*, 980 A.2d 502 (Pa. 2009), the trial court entered a judgment of *non pros* against Merlini in her action against a water authority, engineers, and contractors who constructed a water line on her property without a right-of-way, easement, or permission. Our Court reversed, finding that Merlini's complaint alleged ordinary negligence rather than a professional liability claim and, therefore, no Rule 1042.3 certificate of merit was necessary. *Id.* at 504. "[W]hether there was a breach of that duty did not require professional judgment, but only an understanding of the location of Merlini's property and of any applicable right-of-way or easements intersecting the installed water line." *Merlini ex rel. Merlini v. Gallitzin Water Authority,* 934 A.2d 100, 106 (Pa. Super. 2007).

Our Supreme Court affirmed, agreeing with this Court's determination that Merlini's complaint sounded in ordinary negligence and noting:

> As the Superior Court found, appellant's actions occurred while it performed professional services; however, the issue Merlini raised was not one of professional judgment beyond the scope of common knowledge and experience. Merlini asserted a claim of basic negligent trespass—this is not a breach of a duty owed by a professional, but a breach of a duty owed by any third party entering upon the property of another. As the Superior Court acknowledged, expert testimony may be required to clarify the property rights as established through state, county, and municipal records; however, once that factual issue is clarified, whether appellant trespassed will not require further expert elucidation.

*Merlini*, 980 A.2d at 507-08.

Our review of Appellants' complaint reveals that, with the exception of the corporate liability claims in Count IV, Appellants' claims are garden-

variety negligence claims asserting a claim for premises liability against Appellees relating to an automated door mat in the hallway of Appellees' medical facility. As Appellants correctly indicate, Charles' fall occurred as he was making his way toward the building's exit, not in the course of treatment or any professional relationship with Appellees. Appellants' Brief at 17. "The professional relationship between [Charles] and [his physical therapist] occurred within the course of the physical therapy evaluation which had been completed." *Id.* "Whether the automatic door mat presented a hazard was a premises liability question which was addressed by a premises liability expert in support of the premises liability claims made in the premises liability Complaint." *Id.* at 17-18. As such, we believe this case is more akin to *Swift*, where the plaintiff slipped and fell in the emergency room restroom, than *Grossman*, where the plaintiff fell from an exam table and was injured in the course of treatment.

We conclude the trial court erred in its conclusion that Appellants' claims were grounded in medical malpractice and required medical expert testimony to establish causation. Whether Appellees owed a duty to Charles, a business invitee, and whether Appellees breached that duty causing harm resulting in damages to Appellants, are not questions beyond the realm of common knowledge and experience that a jury is competent to determine. We conclude the trial court erred in determining that Appellants' premises liability claims were medical negligence claims requiring medical

expert testimony. Therefore, we vacate the trial court's grant of summary judgment in part and remand for further proceedings on Appellants' premises liability action. To the extent Appellants' expert can offer expert testimony regarding the automated mat and any risks inherent in its composition or operation, his testimony should be permitted. However, that does not give *carte blanche* to Appellants' engineering expert to offer opinions on medical causation, a subject area beyond the scope of his expertise. We agree with Appellees' assertion that Appellants' engineering expert "is not qualified to offer an expert opinion on the standard of care applicable to a licensed health care provider or whether any breach of such a standard caused harm to a patient." Appellees' Brief at 34 (citing 40 P.S. § 1303.512(b) (relating to expert qualifications) (emphasis in original)).

We further conclude that the claims raised in Count IV of Appellants' complaint are claims of corporate liability requiring a certificate of merit and expert testimony unless the medical provider's negligence is obvious. ***See, e.g., Rostock v. Anzalone***, 904 A.2d 943, 945 (Pa. Super. 2006) (citing ***Grossman***, 868 A.2d at 567). Therefore, we affirm the grant of summary judgment with respect to County IV of Appellants' complaint only.

In light of our disposition of Appellants' first two issues, no discussion of the third issue, relating to timeliness of Appellees' motion, is necessary.

Order affirmed with respect to Appellants' corporate liability claims (Count IV). Order vacated with respect to the remaining premises liability

claims alleged in Appellants' complaint. Case remanded for further proceedings consistent with this Memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/17/2017